574 A.2d 1

Ann Marie MELROD

v.

Joseph K. MELROD.

No. 1385, Sept. Term, 1989.

Court of Special Appeals of Maryland.

May 31, 1990.

Kevin G. Hessler (Harvey B. Steinberg and Miller & Steinberg, on the brief), Rockville, for appellant.

Claudia A. Pott (Sanford K. Ain and Sherman, Meehan & Curtin, P.C., on the brief), Washington, D.C., for appellee.

Argued before BLOOM, KARWACKI and FISCHER, JJ.

BLOOM, Judge.

The Circuit Court for Montgomery County, by judgment of absolute divorce dated 31 January 1989, terminated the marriage of Joseph K. Melrod and Ann Marie Melrod, awarded the wife alimony of $2,500 per month for twelve months, ordered the sale of certain jointly owned real estate, granted the wife a monetary award of $250,000, and awarded her counsel fees in the amount of $45,000.[1] Upon Mr. Melrod's motion to alter or amend the judgment, the court passed an order on 30 June 1989, revising some of its calculations with regard to marital property, adjusting the manner of payment of the monetary award, and reducing the amount of Mrs. Melrod's counsel fees to be paid by Mr. Melrod from $45,000 to $40,000.

Both parties have appealed. Mrs. Melrod complains that the court abused its discretion in failing to award indefinite alimony and in refusing to permit a real estate broker (Mrs. Melrod's mother) to present opinion evidence as to the value of certain property. She also asserts that the court erred in failing to consider and value certain properties owned by Mr. Melrod in making the monetary award and in adopting an incorrect approach in determining that certain assets were partly marital and partly non-marital. In his cross-appeal, Mr. Melrod complains that the court erred in determining that a certain property was partially marital and in its award of counsel fees.

Our conclusion is that the chancellor misconstrued Md. Fam.Law Code Ann., § 8–201(e)(2)(iv),[2] in determining what properties were marital, non-marital, and partly marital and partly non-marital. Since we also conclude that he abused his discretion in refusing to permit Mrs. Melrod's witness to

---

1. The court had earlier passed an order awarding the parties joint legal custody of their minor son, Jacob, with the father having physical custody and the mother having visitation privileges. This appeal does not involve that order.

2. All statutory citations in this opinion are to the Family Law Code, designated (FL).

testify as to values of any property, all issues pertaining to the monetary award will have to be retried. And since any material change in the monetary award will necessarily require reconsideration of alimony and counsel fees, we shall vacate those aspects of the judgment as well.

## Background

The parties were married on 17 October 1982. Their son, Jacob, was born the following year. At the time of the trial, Mr. Melrod was 33 years old; Mrs. Melrod was 30; and Jacob was 5. When the parties met in 1982, Mr. Melrod was a principal in a successful real estate development and investment business; Mrs. Melrod was a salesperson in a clothing boutique, with some experience as a model. Following their marriage, they lived in the husband's home in Chevy Chase but spent substantial time at their alternate residence on a large farm in Middleburg, Virginia. With the husband's encouragement, the wife gave up her employment and became a full time wife, mother, and homemaker. The husband's income was substantial, and the parties enjoyed a very high standard of living, with domestic help, "city" and "country" homes, numerous vacations, and expensive gifts. Despite the presence of domestic help, Mrs. Melrod's non-monetary contributions to the marriage, home, and family were deemed to be substantial.

Although the husband's preoccupation with his career and his use of drugs undoubtedly had some effect on the deterioration of the marriage, the chancellor found that the parties were both at fault for the breakdown in communications and lack of commitment to the marriage that led to their separation in February 1986.

In discussing the various issues we shall allude to other facts as they pertain to those issues.

## I

We begin our discussion of the marital property and monetary award issues with a brief summary of the applicable statutory and case law.

Whether property is marital or non-marital is of importance only with respect to the granting of a monetary award. FL § 8–203 provides that in a proceeding for an annulment or absolute divorce, if there is a dispute as to whether certain property is marital or non-marital property, the court shall resolve that dispute, *i.e.*, determine which property is marital property. FL § 8–204 then requires the court to determine the value of all marital property. And FL § 8–205(a) authorizes the court, once it has determined which property is marital property and the value of the marital property, to grant a monetary award "as an adjustment of the, equities and rights of the parties concerning marital property." The statute lists ten factors that the court is required to consider in granting a monetary award.

■ We then turn to FL § 8–201(e) for a definition of marital property. In general, marital property is any property, however titled, acquired by either or both of the parties during the marriage. It does not include, therefore, property acquired before the marriage. Expressly excluded is property acquired by inheritance or gift from a third party, property excluded by valid agreement, or property "directly traceable" to any of these non-marital sources.

In *Harper v. Harper*, 294 Md. 54, 448 A.2d 916 (1982), the Court of Appeals, adopting and applying the "source of funds" theory, held that property that is paid for in installments is "acquired" within the meaning of FL § 8–201(e) not when title is taken but as an on-going process as payments are made for it. Whether property is marital or non-marital depends upon the source of each contribution as payments are made to acquire the property. Thus, property that had been acquired by one spouse, subject to a mortgage, prior to a marriage, is initially wholly non-marital property; as mortgage payments are made out of marital funds during the marriage, the property becomes partially marital in the proportion that the total contribution of marital funds used to "acquire" the property bears to the amount of non-marital contribution.

 A major issue in this case is whether, by virtue of FL § 8–201(e)(2)(iv), certain valuable properties owned by Mr. Melrod are non-marital in whole or in part, and the extent to which other properties, originally non-marital by virtue of being acquired before marriage, became partly marital as a result of the on-going process, during the marriage, of amortizing the mortgages on them.

Mr. Melrod established that a substantial part of his annual income was non-marital. He owned income producing properties that were non-marital because they had been acquired prior to the marriage, and before his marriage his father had established a trust for him that provided about $5,000 per month in income to him. He made no attempt to keep this non-marital income separate from his marital income, *i.e.*, income earned during the marriage; most of his income, marital and non-marital, was commingled.

Having acquired several valuable properties during the marriage and having paid during the marriage substantial sums in payment of mortgage debts incurred to acquire property before the marriage, Mr. Melrod, through his personal accountant, Lester Kanis, presented the court with an innovative theory of tracing the sources of those funds.

With respect to most of his properties, because of commingling of non-marital and marital income, Mr. Melrod could not directly trace any given payment of money to any specific source of funds. He, through Mr. Kanis, advanced the theory that any expenditure out of the commingled funds, for any purpose, should be construed as an expenditure of both marital and non-marital money in the same proportion that his marital and non-marital income bore to his total income. For example, according to Mr. Kanis, Mr. Melrod's total income in calendar year 1984 was $489,394, of which $45,952 or 9 percent was marital (earned) income and $443,442 or 91 percent was non-marital (derived from non-marital sources). Therefore, as to any asset acquired in 1984, either in whole by new purchase or by amortization of mortgage, the accountant computed that the acquisition was 9 percent marital and 91 percent non-marital. The

same process was applied for each year from 1982, the year of the marriage, through 1987.[3] The court accepted that theory of allocation in determining what property was non-marital and what was marital, with one modification: the sum of $75,000, earned as a consulting fee in 1984 but overlooked by the accountant, was added to the marital income for that year, and the percentages were adjusted accordingly.

This method of determining what was marital and what was non-marital property, advanced by Mr. Melrod and accepted by the court, was erroneous. It is contrary to law. Property acquired by purchase during the marriage and not excluded by valid agreement between the parties, is marital property unless it can be traced directly to a non-marital source of funds or property. FL § 8–201(e)(2)(iv) is quite specific; it excludes from marital property any property acquired during the marriage that is *directly traceable* to a non-marital source. "Directly traceable" is not synonymous with "attributable." Since Mr. Melrod commingled his income from non-marital sources with his marital income, no specific sum of money used to acquire property or reduce an indebtedness on any property can be directly traced to any source. This inability to trace property acquired during the marriage *directly* to a non-marital source simply means that all property so acquired was marital property. *See Brodak v. Brodak*, 294 Md. 10, 447 A.2d 847 (1982), in which the Court of Appeals held that property (new trailers) purchased with income from the operation of the husband's non-marital (acquired by gift) trailer park business were marital property because the income was partly marital since the wife's efforts (housekeeping and bookkeeping) helped generate it. Thus, the trailers could not be traced to the non-marital gift. *See also Gravenstine v. Gravenstine*, 58 Md.App. 158, 472 A.2d 1001 (1984), in

---

**3.** In other years during the marriage, the percentages of marital and non-marital income fluctuated. All income in 1982 was characterized as non-marital. The non-marital portion for 1983 was 60%; for 1985 it was 11%; for 1986 it was 25%, and for 1987 it was 63%.

which this Court held that new securities purchased with marital cash and by reinvesting dividend income from shares of stock acquired by the husband before the marriage were marital property.

Mr. Melrod argues that to deny him the right to apply his proportionate tracing theory would eviscerate the legislative intent of the Property Disposition Act of preserving for each party his or her non-marital property. He refers to *Harper*, in which the Court rejected the Illinois theory of transmutation of non-marital property to marital by the addition of a marital contribution, that theory being based on a statutory preference for marital property. But rejecting a theory that there is a preference for marital property is not the same as adopting a preference for non-marital property. We believe the Maryland statute is neutral in that respect. It does allow a spouse who owns non-marital property to preserve its non-marital status even if it is changed in character or form during the marriage. But in order to do so, that spouse must be able to trace an asset acquired during marriage directly to a non-marital source. If he or she chooses to commingle marital and non-marital funds to the point that direct tracing is impossible, his or her property may lose its non-marital status.

The court's error in determining and valuing marital property, induced by the accountant's "proportionate tracing" theory, had an effect adverse to Mr. Melrod with respect to one property. In 1987, Mr. Melrod sold an asset that was entirely non-marital because he had acquired it before his marriage. He was able to trace the proceeds from that asset directly to the acquisition of two certificates of deposit and an interest in a limited partnership. In order to be consistent in applying the "yearly ratio of marital and non-marital cash flow" theory of tracing, the chancellor refused to allow direct tracing of these particular assets. As a result, he found that these assets were partially marital. That ruling, of course, was erroneous. Just as the "yearly ratio of marital and non-marital cash flow" cannot be used to trace part of commingled funds into

property acquired during the marriage in order to make it partly non-marital, it cannot be used to convert entirely non-marital (directly traceable) property to partly marital.

The errors committed by the court in determining what property was marital and what property was non-marital, which was the first step in making a monetary award, require us to vacate the monetary award portion of the judgment of divorce.

## II

Mr. Kanis, Mr. Melrod's accountant, testified as to the values of Mr. Melrod's various properties and property interests. He described his firm as one that takes an active role with clients, being involved in the structure of acquisition and disposition of assets, as distinguished from "after the fact accountants." He and members of his staff working under his supervision prepared the documentation supporting his evaluations. His opinions did not purport to be of "fair market value" of properties, real or personal. So far as appears in the record, his expertise in assigning values to properties may well be solely that of a certified public accountant, whose valuations are primarily for accounting and tax purposes. He did not testify, in any event, that any of his evaluations represented fair market value. No objection was made either to his qualifications or his opinion testimony.

Mrs. Melrod presented, as an expert witness on valuations of real estate, her mother, Carmen Colandrea. Mrs. Colandrea testified that she was a real estate broker and had been a broker since 1967. She had been licensed since 1964. She further testified that in her capacity as a realtor she has had experience in valuing real estate in order to advise clients interested in buying and selling property. She stated that she had participated in sales of residential, commercial, and business properties and was prepared to testify as to the fair market value of the real estate involved in the case, having spent several months gathering

the data required to make such valuations. Counsel for Mr. Melrod objected to Mrs. Colandrea's qualifications as an expert on the ground that she was a real estate broker, not an appraiser. He said:

Objection, Your Honor. There has been nothing established other than Mrs. Colandrea's (sic) a real estate broker. Courts have recognized, particularly in the case of *Stickle v. City of Baltimore*, 258 Second 551 (sic), decided by the Court of Appeals of Maryland, that brokers are not necessarily competent to testify as to value. Appraisers testify as to value, not brokers. And based on the *voir dire* that's been propered (sic) before your Honor, there isn't a foundation to establish that this witness has the qualifications of an appraiser.

The court sustained the objection. In doing so, it erred.

Counsel's reference to *Sticklle v. City of Baltimore*, 252 Md. 464, 250 A.2d 541 (1969), in his objection to Mrs. Colandrea's qualifications, was misleading; his continued reliance upon that case in this appeal is misplaced. In *Sticklle*, a condemnation case, the property owners called to the stand a Mr. George Rokos, whom they attempted to qualify as an expert witness as to the values of their property. Mr. Rokos stated that he had done appraising while in the Right–Of–Way Department of the City's Bureau of Planning and Surveying for seven years and that for the past ten and one-half years he had been a real estate broker and had done appraising for private clients. But when asked, repeatedly, if he could define "fair market value of property," he was unable to do so. The trial court sustained an objection to the witness's qualifications and the Court of Appeals affirmed. The basis for the Court's ruling was not that the witness was a real estate broker rather than an appraiser, but that he did not have even a minimal understanding of the principles implicit in the definition of "fair market value," which was the very basis for an award of damages in a condemnation case.

The *Sticklle* Court's explanation of the role of both the trial judge and the appellate court in matters of this nature bears repeating here:

The competency of an expert witness to testify as to matters within his expertise is generally a preliminary question for the court. *Levine v. Moreland,* 229 Md. 231, 182 A.2d 484 (1962); *Yukin [Yudkin] v. State,* 229 Md. 223, 182 A.2d 798 (1962); *Rotwein v. Bogart,* 227 Md. 434, 177 A.2d 258 (1962); *Pumphrey v. State Roads Commission,* 175 Md. 498, 2 A.2d 668 (1938); see also 31 Am.Jur.2d, *Evidence* § 31 at 532 (1967). It is well established that a person must demonstrate a minimal amount of competence or "expertise" on the subject on which he is allegedly an expert in order to be qualified to testify as an expert witness. Cf. *Rotwein v. Bogart,* 227 Md. 434, 177 A.2d 258 (1962). Accordingly, the determination of whether a witness is qualified as an expert witness is generally within the discretion of the court, and will not be overturned unless his discretion has been manifestly abused to the prejudice of the complaining party. *M.A. Realty Co. v. State Roads Commission,* 247 Md. 522, 233 A.2d 793 (1967); *State Roads Commission v. Creswell,* 235 Md. 220, 222, 201 A.2d 328 (1964); *Turner v. State Roads Commission,* 213 Md. 428, 132 A.2d 455 (1957). Thus, in the *M.A. Realty* case, we stated:

"Questions in regard to the qualification of an alleged expert witness are largely in the discretion of the trial court and the court's determination of whether the witness is qualified will only be disturbed on appeal if there has been a clear showing of abuse of the trial court's discretion." (247 Md. at 526, 233 A.2d at 796.)

252 Md. at 471–72, 250 A.2d 541.

■ There is no inflexible rule defining how much a person must know in order to be qualified to express an expert opinion on any given subject. The general rule is that a witness,

in order to qualify as an expert, should have such special knowledge of the subject on which he is to testify that he

can give the jury assistance in solving a problem for which their equipment of average knowledge is inadequate.... A witness is qualified to testify as an expert when he exhibits such a degree of knowledge as to make it appear that his opinion is of some value, whether such knowledge has been gained from observation or experience, standard books, maps of recognized authority, or any other reliable sources.

*Casualty Ins. Co. v. Messenger*, 181 Md. 295, 298, 29 A.2d 653 (1943). *See also Simmons v. State*, 313 Md. 33, 542 A.2d 1258 (1988); *Greenstein v. Meister*, 279 Md. 275, 284, 368 A.2d 451 (1977).

In *Marder v. Mayor & City Council of Baltimore*, 232 Md. 299, 304, 192 A.2d 512 (1963), the Court of Appeals quoted with approval from *Preske v. Carroll*, 178 Md. 543, 552, 16 A.2d 291 (1940), as follows:

It is well established that any real estate dealer, or assessor, or any other person who has been engaged in business of such a character as to give him special knowledge of the subject, is competent to testify in reference to the value of land, if he has had an opportunity to form a correct opinion as to its value.

*See also Turner v. State Roads Commission*, 213 Md. 428, 132 A.2d 455 (1957), in which the Court of Appeals held that the trial court committed reversible error in refusing to permit a witness for the landowners, a real estate broker whose experience was somewhat similar to that of Mrs. Colandrea, to testify as to the value of property being taken.

■ Mr. Melrod argues that Mrs. Melrod cannot complain about the court's ruling because she made no further attempt to qualify the witness. That same argument was made and rejected in *Turner v. State Roads Commission, supra.* The court sustained Mr. Melrod's objection to the witness's general qualification to render any opinion as to property values; since she was not an appraiser, any further attempt to qualify her on the basis of her experience as a broker would have been fruitless. Indeed, at the time he

ruled that Mrs. Colandrea was not qualified to testify, the chancellor had before him a proposed exhibit, put together by the witness, consisting of almost 300 pages detailing the source of her knowledge pertaining to each parcel of property, comparable sales, photographs, deeds, contracts of sale, land descriptions, and the resulting opinion as to the "fair market value" of each property.

There was manifest prejudice to Mrs. Melrod in the court's refusal to let her expert witness testify solely on the ground that she was not an appraiser. The court was required to make findings of fact as to values of various properties. Having no independent knowledge of the properties or data relating to the values thereof, the chancellor needed expert opinion evidence to enable him to make such findings. He accepted the opinions of an accountant, with no indication that those evaluations were of "fair market value," but rejected the opinions of an experienced real estate broker prepared to testify as to the "fair market value" of the properties. The court's obligation was to determine the value of marital properties, and "[u]nder Maryland Law value means fair market value." *Rosenberg v. Rosenberg*, 64 Md.App. 487, 525, 497 A.2d 485, *cert. denied*, 305 Md. 107, 501 A.2d 845 (1985). Mrs. Colandrea's testimony, therefore, may have been useful to the court in performing its duty to value all marital property, assuming, of course, that she was otherwise qualified. Furthermore, by refusing to allow Mrs. Colandrea to give her opinion evidence on behalf of Mrs. Melrod, the court created a situation in which it, as trier of fact, had before it only the opinion evidence of one party's expert witness and none supporting the other party's position. The basic unfairness of that situation was an additional factor to be weighed by the court in exercising its discretion. *See Marder v. Mayor & City Council of Baltimore, supra*, 232 Md. at 304, 192 A.2d 512.

Since the chancellor erred both in determining and valuing marital property and in rejecting opinion evidence as to valuation, we shall not only vacate the monetary award

portion of the divorce judgment but also remand for a new trial on that issue.

### III

Mrs. Melrod contends that the court erred in failing to identify and value certain marital property. She refers to two assets: (1) Mr. Melrod's interest in J.P. Metz Company, the corporation through which he conducted his business, and (2) Mr. Melrod's interest in a partnership that owned improved real estate located at 1990 M Street. We find no merit in those contentions.

■ As to J.P. Metz Company, the evidence disclosed that when it was formed in 1980 Mr. Melrod owned a one-half interest. He acquired the remaining one-half interest sometime thereafter and was sole owner at the time of the divorce. There was no evidence as to whether he acquired the second half before or after he married Mrs. Melrod. There is, as we have noted, nothing in the Marital Property Act that indicates a legislative preference for the classification of property as marital. *Harper v. Harper, supra.* Therefore, the burden is upon the party who asserts a marital interest in property to present evidence as to identity and value of property. *Pickett v. Haislip,* 73 Md.App. 89, 97, 533 A.2d 287 (1987), *cert. denied,* 311 Md. 719, 537 A.2d 273 (1988); *Green v. Green,* 64 Md.App. 122, 139, 494 A.2d 721 (1985). There being no evidence tending to show that the asset in question was partly marital, the court did not err in refusing to designate that property as marital.

■ With respect to the 1990 M Street partnership, the evidence clearly established that the partnership real estate was sold on 22 January 1988, a year before the divorce, and that Mr. Melrod received $300,000 for his 15 percent interest. Mrs. Melrod disputes Mr. Melrod's testimony as to what he did with the money, but there was no evidence suggesting that he had dissipated the proceeds in order to deprive her of her marital rights, so there was no basis for

considering the proceeds as marital property. *Cf. Sharp v. Sharp*, 58 Md.App. 386, 473 A.2d 499 (1984). And, of course, the partnership interest itself was not marital property because it did not exist at the time of the divorce. *Gravenstine v. Gravenstine, supra.*

## IV

■ Mrs. Melrod was awarded rehabilitative alimony of $2,500 per month for one year. She presents no argument as to the amount of rehabilitative alimony award or its duration, so those issues are not before us. Her contention is that the chancellor abused his discretion in failing to award her indefinite alimony. That contention is one that we can reject summarily. Her trial counsel did not request the court to award indefinite alimony. By agreement, counsel for both parties waived oral argument and submitted written arguments, including proposed factual findings and requests for relief. Mrs. Melrod's trial counsel requested an award of three years rehabilitative alimony, not indefinite alimony. On appeal she asserts that the matter of indefinite alimony was before the court because it was one of her prayers for relief in her counterclaim. We are not concerned with a matter of preservation of an issue for appeal, however. We are invited to rule that the chancellor abused his discretion in failing to grant a form of relief that, at the time of his ruling, he was not requested to grant. We decline that invitation.

Our holding that the court did not err or abuse its discretion in failing to grant indefinite alimony because that relief was not requested does not end our consideration of the alimony award. We are vacating the monetary award and remanding that issue for a new trial. That necessitates vacation of the alimony award as well, since any significant change in the monetary award will require the court to reassess its alimony award. FL § 8–205(b)(9); *Prahinski v. Prahinski*, 75 Md.App. 113, 540 A.2d 833, *cert. granted*, 313 Md. 572, 546 A.2d 490 (1988); *Campolattaro v. Campo-*

*lattaro,* 66 Md.App. 68, 502 A.2d 1068 (1986); *Cotter v. Cotter,* 58 Md.App. 529, 473 A.2d 970 (1984).

The court found that after a relatively brief period of rehabilitative alimony, Mrs. Melrod could be self-supporting. We cannot say, after reviewing the evidence, that that finding was clearly erroneous. Nevertheless, in view of the great disparity in wealth between the parties, it is obvious that no matter how much rehabilitative alimony Mrs. Melrod receives and how much progress it will enable her to make toward becoming self-supporting, the respective standards of living of the parties will be greatly disparate.

Mrs. Melrod refers to evidence from which she computes that the disparity in income after she is "rehabilitated" will be in the ratio of ninety to one. That computation, it appears, is based on tax returns for a year in which Mr. Melrod's income from all sources was particularly high; it also appears to ignore the fact that any substantial monetary award to Mrs. Melrod can be a source of income to her. *See Newman v. Newman,* 71 Md.App. 670, 527 A.2d 61 (1987). Even taking all of that into account, however, unless a revised monetary award will provide Mrs. Melrod with a great deal of income, the disparity in income and, therefore, standards of living, will be far greater than we held to be unconscionable in *Holston v. Holston,* 58 Md. App. 308, 473 A.2d 459 (1984) and *Rogers v. Rogers,* 80 Md.App. 575, 565 A.2d 361 (1989). As we pointed out in *Rogers,* when misconduct of the dependent spouse was not the cause of the breakup of the marriage and the divorce is granted on no fault grounds, it would seem that a *gross* disparity in standards of living would ordinarily translate to an "unconscionable disparity" within the meaning of FL § 11–106(c)(2), which authorizes an award of indefinite alimony on that basis.

In the case *sub judice,* of course, the marriage was of a relatively short duration, six years, with the parties being separated for about half that time. Nevertheless, Mr. Melrod, as the chancellor found, is a man of great wealth, who had chosen to establish for himself and his wife a very

high standard of living during their marriage. They have a child who will be spending a substantial part of his time with his mother, and it could not help but have some effect upon the child to go back and forth between a father who can afford to live in luxury and a mother who is required to exercise some degree of frugality. Weighing all these factors, we do not believe that the relatively short duration of the marriage would render a gross disparity in living standards an equitably conscionable one.

Nor do we regard the failure of Mrs. Melrod's trial counsel to request indefinite alimony, when he submitted his closing argument, as an irrevocable waiver of that relief. He argued for a monetary award of more than $4,000,000; an award of that amount could, in time, generate a substantial amount of income, enabling Mrs. Melrod to forego alimony. It is certainly apparent that counsel was expecting a considerably greater award than the court granted. As pointed out, *supra,* the court must consider any monetary award in granting alimony, FL § 11–106(b)(11)(ii), and any award of alimony in granting a monetary award. FL § 8–205(a)(9).

V

██ Mrs. Melrod complains that the court failed to value Mr. Melrod's non-marital property. It is true that after the court completes the first two stages in making a monetary award—determining what is marital property and valuing it—and reaches the third stage, it must take into account specific factors. Consideration of two of those factors, the value of all property interests of each party and the economic circumstances of each party at the time the award is to be made, obviously requires the court to be aware of any non-marital property and have some idea of its worth. We do not believe that the statute requires the court to evaluate non-marital property in the same manner as marital property. It is enough if the court is generally aware of the relative wealth of the parties, in order that it can determine whether it would be equitable to award a greater

share of marital property to the spouse owning less of the total property and having less wealth because of that spouse's greater need and the wealthy spouse's lesser need for additional assets.

In the case *sub judice*, the court had sufficient evidence before it to be generally aware of Mr. Melrod's considerable wealth. From what we can glean from the record, all of his non-marital assets were listed. There is a complaint about the values assigned to them and whether the court gave proper consideration to those values. We need not address those complaints. On remand, Mrs. Melrod will have an opportunity to present expert opinion evidence as to values of all property owned by Mr. Melrod, non-marital as well as marital, and we are confident that the chancellor will give due considerations to all the statutory factors in making a monetary award.

## VI

Mr. Melrod contends that the court erred in awarding a counsel fee of $40,000 to Mrs. Melrod because that was considerably more than the total bill of the attorney representing her at trial. Mrs. Melrod's trial counsel, however, was not the only attorney who had represented her in this case. Bills from her previous attorneys were submitted to the court. The matter of counsel fees, whether to award them, and, if so, how much, are generally left to the sound discretion of the trial judge. *Foster v. Foster*, 33 Md.App. 73, 364 A.2d 65, *cert. denied*, 278 Md. 722 (1976). In exercising that discretion, the trial judge may rely upon his own knowledge and experience in appraising the value of an attorney's services. *Id.*

Based on our perusal of the record, we cannot say that the award or the amount of it constituted an abuse of discretion. Nevertheless, since the court is required to consider the relative financial circumstances, resources, and needs of the parties in awarding suit money, counsel fees, and costs, FL § 11–110, we believe that our remand for

retrial on the monetary award issues necessitates vacation of the award of counsel fees so that that can be reconsidered in the light of any material revision in the monetary award.

*Summary*

For the reasons set forth above, we are vacating those portions of the divorce judgment granting a monetary award and awarding alimony and counsel fees, affirming all other portions of the judgment, and remanding the case for further proceedings in accordance with this opinion.

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART; CASE REMANDED FOR FURTHER PROCEEDINGS IN ACCORDANCE WITH THIS OPINION.

COSTS TO BE PAID BY APPELLEE.