631 A.2d 119

Hersh COUSIN

v.

Karen M. COUSIN.

No. 1933, Sept. Term, 1992.

Court of Special Appeals of Maryland.

Sept. 29, 1993.

Harry B. Siegel (Joel Marc Abramson, on the brief), Columbia, for appellant.

Sara M. Donohue (Dragga and Lyon, on the brief), Rockville, for appellee.

Argued before BISHOP, BLOOM and CATHELL, JJ.

CATHELL, Judge.

The Circuit Court for Montgomery County granted a divorce to Karen Cousin, appellee, from Hersh Cousin, appellant, on September 16, 1992. In addition, the lower court granted, in part, her exceptions to the master's findings and recommendations, awarding her sole custody of the children and indefinite alimony in the amount of $1000 per month. Unhappy with this decision, Hersh Cousin appeals to this Court. He presents two issues on appeal.

1. Whether the trial judge erred in sustaining the Appellee's exceptions to the Master's recommendation awarding joint custody of the parties' minor children to them and thereafter award[ing] sole custody to the Appellee.

2. Whether the trial judge erred in sustaining the Appellee's exceptions to the Master's recommendation that the Appellee receive three years of rehabilitative alimony and thereafter award[ing] Appellee indefinite alimony.

We hold that the lower court did not err in either regard. Accordingly, we affirm the judgment of the lower court.

## THE FACTS

The parties were married on February 14, 1981. As a result of this union, they had two children. One was adopted on May 10, 1985. Their second child, Asher David, was born on November 1, 1988. The parties separated by mutual agreement on or about December 6, 1990. Karen Cousin filed suit for a limited divorce on December 10, 1990, alleging as grounds for the divorce voluntary separation and constructive desertion. In addition to the limited divorce, she sought sole custody of the couple's two children, child support, and "rea-

sonable" alimony. After a hearing before a master, the circuit court awarded joint legal custody to the parties, placing the children with their mother but allowing appellant reasonable rights of visitation as set out in the pendente lite order.

At the time the parties separated, appellee took the older child, Max, to various doctors and psychologists for testing at the recommendation of his school. He was eventually diagnosed with an attention deficit hyperactivity disorder. Currently, he receives both medication and treatment for this disorder.

On May 22, 1992, appellee filed an amended complaint for absolute divorce on the same grounds as the limited divorce. A three day hearing was held before a domestic relations master. On June 24, 1992, he issued his findings and recommendations, which recommended, *inter alia,* that the parties be awarded joint legal custody of their sons and that appellee receive alimony in the amount of $1000 per month for three years.

Appellee filed exceptions to these findings and recommendations, asserting that the master erred in recommending joint legal custody and in recommending the amount and duration of the alimony. She contended that her husband remained in opposition on two major issues, the educational and medical needs of their son Max. Among other things, she stated that he did not understand or accept the emotional difficulties nor the special educational needs of Max. She also argued that the master made no factual findings with respect to any of the elements to be considered in awarding alimony. In his answer, appellant asserted that he was interested in his children and that the parties could communicate with each other if they would only try. Moreover, he maintained that joint custody was appropriate because the parties shared the same values. As to the alimony, he contended that his wife could be employed at $18,000 to $24,000 per year, and that after eighteen months she would be able to support herself.

A hearing on the exceptions was held on August 11, 1992, after which the lower court sustained appellee's exceptions in

part. Appellee was awarded sole custody of the children, and the court ordered appellant to pay appellee alimony for an indefinite period in the amount of $1000 per month. In so doing, the court commented:

[W]ith respect to joint custody the Master concluded, and I quote, "It is in the best interest of the children that the inputs from both parents be [had] in connection with the children's health, education, and welfare.

. . . .

Now, the parties in this case have been joint legal custodians of the children since the pendente lite order of February 4, 1991. This arrangement has not, over the past 18 months, resulted in any impasse or deadlock between the parties that has affected the welfare of the children.

Furthermore, the Court concludes, as did the Master, that both parties are fit and proper custodians, although the wife may be entitled to a little better parenting grade than the husband.

Should not the husband, therefore, have an equal share in the important decisions regarding the children? In this regard, the Court concludes that Mr. Cousin should have input into the lives of the children but that Mrs. Cousin should have, as she has in the past, the final say with respect to the health, education, and welfare of the children. And this precludes, in the Court's opinion, joint custody.

. . . .

On two major issues, and this is Max's medical welfare and educational welfare, the parties do not seem to agree. Dr. Donohue, who seemed to understand the joint custody concept, was of the opinion that joint custody would not be beneficial.

Mrs. Cousin has made the important decisions affecting the children's welfare throughout their lives. She should continue to do so. This does not mean, however, that she should not consult with her husband regarding the children's welfare or that she should completely ignore what he has to say. . . .

. . . .

With respect to alimony and support, the Court has reviewed the record with respect to the husband's earnings. The Master's conclusion that the husband earn[s] $84,000 gross per year is supported by the evidence. Although there is some evidence to suggest that he has more spendable money than is reflected on his financial statement. . . .

. . . .

The Court will, however, sustain the exceptions with respect to the duration of the alimony. It is the Court's best prognostication that, given Mrs. Cousin's present vocational skill, the ages of the minor children, and considering the husband's vocational expert's opinion and testimony, it is the Court's opinion that Mrs. Cousin will not become self supporting after three years, nor will she be within a foreseeable future.

The Court believes that even after the wife makes maximum progress toward being self-supporting, the respective standards of living between her and husband will be unconscionably disparate.

## LEGAL ANALYSIS

### STANDARD OF REVIEW

The Court of Appeals in *Domingues v. Johnson*, 323 Md. 486, 490, 593 A.2d 1133 (1991), held that "the chancellor incorrectly accepted the recommendations of the master upon a finding that those recommendations were not clearly erroneous, instead of subjecting the master's fact-finding to a clearly erroneous test and then exercising his independent judgment concerning the proper conclusion to be reached upon those facts." The Court opined:

The chancellor must carefully consider the mother's allegations that certain findings of fact are clearly erroneous, and decide each such question. The chancellor should, in an oral or written opinion, state how he resolved those challenges. Having determined which facts are properly before

him, and utilizing accepted principles of law, the chancellor must then exercise independent judgment to determine the proper result.

*Id.* at 496, 593 A.2d 1133. *See Noffsinger v. Noffsinger,* 95 Md.App. 265, 273, 620 A.2d 415 (1993); *Best v. Best,* 93 Md.App. 644, 651, 613 A.2d 1043 (1992); *Krikstan v. Krikstan,* 90 Md.App. 462, 469, 601 A.2d 1127 (1992); *Hadick v. Hadick,* 90 Md.App. 740, 744–45, 603 A.2d 915 *cert. denied,* 327 Md. 626, 612 A.2d 256 (1992); *Levitt v. Levitt,* 79 Md.App. 394, 399, 556 A.2d 1162 *cert. denied,* 316 Md. 549, 560 A.2d 1118 (1989); *In re Danielle B.,* 78 Md.App. 41, 57–59, 552 A.2d 570 (1989); *Brandon v. Brandon,* 66 Md.App. 214, 221–22, 503 A.2d 264 (1986); *Wenger v. Wenger,* 42 Md.App. 596, 604, 402 A.2d 94, *cert. granted,* 286 Md. 755 (1979), *appeal dismissed per stipulation,* January 1, 1980. The Court opined further in *Kirchner v. Caughey,* 326 Md. 567, 572, 606 A.2d 257 (1992), that the chancellor's opinion, oral or written, "should address as well the issues relating to the conclusions to be drawn from the facts found." *See Ross v. Ross,* 327 Md. 101, 104, 607 A.2d 933 (1992). On appeal, our review of the chancellor's independent judgment is confined to whether the decision conforms to law and whether it constitutes an abuse of discretion. *Robinson v. Robinson,* 328 Md. 507, 513–14, 615 A.2d 1190 (1992). *See Noffsinger,* 95 Md.App. at 273, 620 A.2d 415; *Best,* 93 Md.App. at 655, 613 A.2d 1043; *Krikstan,* 90 Md.App. at 469, 601 A.2d 1127; *Rock v. Rock,* 86 Md.App. 598, 607, 587 A.2d 1133 (1991).

## I.

■ With respect to the issue of custody, appellant first asserts that under *Domingues* the chancellor must defer to the master's findings of "first-level" facts. In support of this proposition, he sets forth those findings of the master that he believes constitute "first-level" facts, which we rephrase as follows:

1. The parties were married on February 14, 1981.
2. The parties are parents of two minor children: Max and Asher.

3. The parties mutually and voluntarily separated more than 12 months prior to the time the amended complaint was filed.

4. Both parties are fit and proper custodians to enjoy joint legal custody of the children.

5. Max has been diagnosed as having an "attention deficit hyperactivity disorder" and is in need of the special program available at the Children's Learning Center at Aspen Hill.

6. The lack of cooperation recited by the plaintiff with respect to decisions involving the children is brought about largely by the plaintiff and her unwillingness to accept the joint legal custody concept.

7. The lack of cooperation will disappear once the pressures and trauma of this litigation have passed.

8. The children need the strengths of each parent.

Since its filing, *Domingues* has become among the most frequently cited cases concerning custody. It is usually liberally cited by both sides to support their positions. It is often cited as the support for each conflicting assertion. Rarely, however, is it cited for what, in light of the continuing *Domingues*-type controversies arising from the trial courts, is becoming perhaps its most important comment:

> Although the use of masters has proven beneficial in a variety of cases, *the question of the advisability of referring contested custody cases to a master* in those instances where the trial court has discretion to do so, *is one that should be carefully considered. If a chancellor must essentially duplicate the effort and dedication of time of a master in order to ultimately decide a case, nothing has been gained by referral to the master.* On the other hand, if, because of the expertise of the master, or for other reasons, parties often accept the recommendation of the master and exceptions are infrequently filed, the use of a master may be advisable.

*Domingues,* 323 Md. at 497, 593 A.2d 1133 (emphasis added, footnote omitted).

The Court in *Domingues* commented only briefly on the fact-finding process. In so doing, the Court gave an example indicating that the "intent with which one acts, although found by use of inferences drawn from other facts, is a fact to be found by the master." *Noffsinger*, 95 Md.App. at 275, 620 A.2d 415. Unfortunately, the Court did not clarify the distinction between first and second level fact-finding any further.[1] It did state, however, that the view of the "facts" taken by the Court of Special Appeals was too narrow. *Domingues*, 323 Md. at 494, 593 A.2d 1133. The Court opined that the distinction between "first-level" facts and "second-level" facts made in *Wenger*, 42 Md.App. 596, 402 A.2d 94, "[t]hough certainly accurate . . . suggests a rather simplistic distinction . . . that may . . . prove misleading." *Domingues*, 323 Md. at 494, 593 A.2d 1133.

In *Wenger* and the cases that followed, this Court attempted to distinguish between "first-level" facts, to which the chancellor must give deference unless clearly erroneous, and "more abstract, second-level, conclusory or dispositional facts," which are not entitled to any deference whatsoever. *Wenger*, 42 Md.App. at 607, 402 A.2d 94. As we said in *Levitt v. Levitt*, 79 Md.App. 394, 398, 556 A.2d 1162, *cert. denied*, 316 Md. 549, 560 A.2d 1118 (1989):

Deference will be accorded to the facts as found by the Master, but this only applies to "first-level" facts. First-level facts are those that answer the What?, Where? and How? questions. Deference is not accorded to "second-level" facts or to recommendations. Second-level facts are ultimate conclusions drawn from the first-level facts. Second-level facts are conclusions and inferences drawn from first-level facts. A first-level fact would be that one or both parents used drugs. A second-level fact would be that that

---

1. Appellant states that "[t]he Court of Appeals spent much time discussing that a 'first-level' fact is one that constitutes more fact and less opinion in it, where a 'second-level' fact is more abstract and sounds more of opinion than of fact." Even if this were an accurate interpretation of the Court's opinion, we fail to see how that helps clarify the issues here.

use did or did not affect Chad. A recommendation would be a change or lack of change of custody. [Citation omitted.]

*See also In re Michael W.,* 89 Md.App. 612, 621, 599 A.2d 458 (1991) (stating that the master hears witnesses, observes their demeanor, and therefore is able to make judgments based on intangibles, not apparent in the record); *In re Danielle B.,* 78 Md.App. 41, 61, 552 A.2d 570 (1989) (stating that first-level facts include facts contained in the testimony of the children and finding that what the children said did not happen).

Although the Court of Appeals held that the distinction as established by this Court may be in some circumstances too simplistic, we conclude that *Wenger* and its progeny do in fact describe those facts that are always "first-level," *i.e.*, the facts that answer the What?, Where?, and How? questions. In addition, we do not believe the Court of Appeals meant to give masters the ability to bind the chancellor with their recommendations. *See Ellis v. Ellis,* 19 Md.App. 361, 365, 311 A.2d 428 (1973) (holding that the litigant has the right to have the benefit of the court's judgment as distinguished from the master's alone). Accordingly, the recommendation as to the ultimate disposition of the issue in question, *i.e.*, to whom to award custody, will never be given the deference of a "first-level" fact. *See Robinson,* 328 Md. at 513, 615 A.2d 1190 ("The ultimate conclusion as to the custody of a child is within the sound discretion of the chancellor.") (quoting *Ross v. Hoffman,* 280 Md. 172, 186, 372 A.2d 582 (1977)); *Rock,* 86 Md.App. at 607, 587 A.2d 1133 ("The decisions on such matters as ... whether to award spousal support, ... to whom to award custody ... and all other conclusions are solely within the prerogative of the trial judge."); *Mitchell v. Mitchell,* 61 Md.App. 535, 541–42, 487 A.2d 680 (1985) (holding that final determination regarding custody must be made independently by chancellor). In this case we are not forced to attempt to reach any conclusions about those "facts" that fall in between these two extremes.

We find it unnecessary to determine which of the master's statements are "first-level" facts. Assuming that appellant is

correct and they are all "first-level" facts, these "facts" do not dictate one conclusion as appellant suggests. "That the conclusions and recommendations of the master are well supported by the evidence is not dispositive if the independent exercise of judgment by the chancellor on those issues would produce a different result." *Domingues,* 323 Md. at 491–92, 593 A.2d 1133. *See also In re Michael W.,* 89 Md.App. at 622, 599 A.2d 458 ("A given set of circumstances does not lead to one conclusion, but rather may support a range of conclusions."). In *Domingues,* the Court further opined:

> The evidence in a given case may be sufficient to support an award of custody to either parent. Notwithstanding the oft-repeated reference in the cases to "fit" and "unfit" parents, it is quite often the case that both parents are entirely "fit" to have legal and/or physical custody of a child, but joint custody is not feasible. In such cases, the chancellor must exercise his or her independent discretion to make the decision. This does not mean that the chancellor must disregard the recommendations of the master. Consideration may and should be given to those recommendations, but in the final analysis, the decision must be made by the chancellor.

*Domingues,* 323 Md. at 492, 593 A.2d 1133. Both the master and the trial judge concluded that the parties are fit and proper custodians. They did not agree, however, on whether joint custody was appropriate. The very fact that the chancellor reached a different conclusion evidences the fact that he exercised his independent judgment. As we stated above, we may only overturn that judgment upon a clear abuse of discretion. We hold that there was no abuse.

Appellant contends that "there was no possible way that the trial judge could have interpreted those 'first-level' facts to favor sole custody by the Appellee." We do not agree. "We emphasize that in any child custody case, the paramount concern is the best interest of the child. . . . The best interest of the child is . . . not considered as one of many factors, but as the objective to which virtually all other factors speak." *Taylor v. Taylor,* 306 Md. 290, 303, 508 A.2d 964 (1986). In

*Taylor,* the Court of Appeals opined that the most important factor in the decision of whether to award joint legal custody is the capacity of the parents to communicate and to reach shared decisions affecting the child's welfare. *Id.* at 304, 508 A.2d 964. "Rarely, if ever, should joint legal custody be awarded in the absence of a record of mature conduct on the part of the parents evidencing an ability to effectively communicate with each other...." *Id.* "[I]f the evidence discloses the parents do not share parenting values ... joint legal custody is not appropriate." *Id.* at 305, 508 A.2d 964. In the case at bar, the chancellor specifically found that the parties cannot agree on two major issues, the medical and educational welfare of the older child. This finding, by itself, may "make[ ] joint custody an unacceptable arrangement, and justifies the chancellor's decision." *Hughes v. Hughes,* 80 Md.App. 216, 233, 560 A.2d 1145 (1989) (citations omitted). In addition, he took into consideration that appellee had always been the decision maker in the children's lives, and that this situation should not be disturbed. Based on our review of the record, we cannot say that the trial court abused its discretion.

Appellant also complains that the master and the trial court failed to make "any formal findings of fact in proper form." We agree that it would be convenient to have the master's report broken down into sections detailing facts and recommendations. As to appellant's contention concerning the chancellor's opinion, we reiterate that a chancellor, when ruling on exceptions to the master's report, "must render an opinion resolving any challenge to the master's findings of fact and reflecting 'consideration of the relevant issues and the reasoning supporting the chancellor's independent decisions on those issues.'" *Ross v. Ross,* 327 Md. 101, 104, 607 A.2d 933 (1992) (quoting *Kirchner v. Caughey,* 326 Md. 567, 573, 606 A.2d 257 (1992)). The chancellor in the present case did not commit error in regard to the first requirement. Because appellee did not allege any specific fact-finding error, there was no need for the chancellor to review and address each finding. *See Noffsinger,* 95 Md.App. at 274 n. 1, 620 A.2d 415. Appellant contends that the lower court's opinion failed to include any

consideration of the issues and his analysis supporting the decision. As we stated above, the court did not believe joint custody was appropriate because the parties could not agree on two major issues. The lower court did in fact consider the relevant issues sufficiently. The chancellor is not required to articulate every fact upon which he relies.

Finally, appellant complains that it was not possible for the chancellor to read the entire transcript as the hearing was not transcribed in its entirety. We find no merit in this argument because the court is not required to read the transcript in its entirety. As set out in *Domingues*, "the chancellor should not be required to conduct an unassisted search of the entire record for testimony that would support each challenged finding." 323 Md. at 496, 593 A.2d 1133. The parties are responsible for specifying those portions of the transcript that need to be reviewed. Both parties did in fact do this in the present case. Appellant cannot complain that the court was missing vital information when he did not bring it to the court's attention earlier.

## II.

Appellant next contends that appellee did not seek indefinite alimony in either her complaint or her amended complaint. He suggests that this Court impose a rule that a litigant seeking indefinite alimony must specifically request it or be barred from receiving it. In support of this proposition, appellant cites to *Melrod v. Melrod,* 83 Md.App. 180, 195, 574 A.2d 1, *cert. denied,* 321 Md. 67, 580 A.2d 1077 (1990), where this Court declined to rule that the lower court abused its discretion in failing to grant indefinite alimony when that relief had not been requested. In the instant case, however, appellee requested "reasonable" alimony in her pleadings. Additionally, before both the master and the chancellor her attorney requested that a "reasonable" amount of alimony be awarded for an indefinite period. Unlike the finding in *Melrod,* here indefinite alimony *was* awarded as "reasonable" alimony. Thus, this case does not fit within the holding of

*Melrod.* The term "reasonable" alimony is sufficiently broad so as to include indefinite alimony. We know of no law that requires the specific term "indefinite" to be included in a prayer for alimony in order for it to be considered. Nowhere in section 11–106 of the Family Law Article is the term "indefinite alimony" used. The term "alimony" is used generically. The word "indefinite" is utilized only to authorize the courts to impose a term, *i.e.,* temporary or indefinite for the duration of alimony. We acknowledge that some of the cases refer to "indefinite alimony." The use of the term tends to create a classification of the type of alimony. "Indefinite," rather than defining alimony, more correctly describes the duration of the period for the payment of alimony.

Appellant further asserts that the master made a finding of fact that appellee would be able to support herself at the end of three years. Such a finding, he argues, is a "first-level" fact, which must be given deference unless clearly erroneous. Even if we were to agree that this was a first-level fact and that the court erred in disregarding it, we would still uphold the independent conclusion of the trial court based on other findings. The court found that even after the wife became self-supporting, the standards of living would be unconscionably disparate. There is evidence in the record supporting the finding. According to appellant's expert, the most appellee could earn is $24,000, while appellant earns $84,000 or more. "Indefinite support is justified where circumstances are such that it is unlikely that the recipient will ever become economically self-sufficient *or* where unconscionable disparate living standards would exist." *Rock,* 86 Md.App. at 608, 587 A.2d 1133 (emphasis added). "[S]elf-sufficiency per se does not bar an award of indefinite alimony if there nonetheless exists an unconscionable disparity in the parties' standards of living after divorce." *Tracey v. Tracey,* 328 Md. 380, 392–93, 614 A.2d 590 (1992). In *Rock,* we commented: "Our approval or denial of these awards clearly indicate the importance we place upon the judgment and discretion of the fact finder . . . ." 86 Md.App. at 612, 587 A.2d 1133. Appellee's highest possible income is 29% of the husband's income. We cannot say that

the chancellor's finding that this is unconscionably disparate is clearly erroneous. *See Coviello v. Coviello,* 91 Md.App. 638, 644–45, 605 A.2d 661 (1992), and cases cited therein; *Rock,* 86 Md.App. at 612, 587 A.2d 1133 ("This Court has yet to reverse an award of indefinite spousal support in a published opinion on the basis that the finding of unconscionable disparity was clearly erroneous.") The trial judge did not abuse his discretion. Accordingly, we affirm the award of alimony of indefinite duration.

JUDGMENTS AFFIRMED; COSTS TO BE PAID BY APPELLANT.