GORDON LEE RICHARDSON *v.* DIRECTOR,
PATUXENT INSTITUTION

[No. 982, September Term, 1975.]

*Decided May 7, 1976.*

The cause was argued before MORTON, POWERS and GILBERT, JJ.

*Arthur E. Leitch, Jr., Assigned Public Defender,* for appellant.

*Bernard A. Raum, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County* and *Laurence Bowe, Assistant State's Attorney for Prince George's County* on the brief, for appellee.

GILBERT, J., delivered the opinion of the Court.

Gordon Lee Richardson, appellant, was adjudged by Judge Robert B. Mathias, at a non-jury trial in the Circuit Court for Prince George's County, to be a defective delinquent within the meaning of Md. Ann. Code art. 31B, § 5. We granted appellant leave to appeal, and the matter was transferred to the regular docket.

In this Court, appellant contends that the trial court committed reversible error:

    I. ". . . by overruling the appellant's exceptions to appellee's failure to answer certain interrogatories."

    II. ". . . when it admitted the diagnostic staff report without proof that said report was the unanimous or majority opinion of the staff that evaluated appellant."

    III. ". . . in allowing the State's only witness, a psychologist, to testify to a 'reasonable medical certainty' that the appellant was a defective delinquent."

## I.

A defective delinquency proceeding is a civil proceeding, *Kisselovich v. Director*, 30 Md. App. 293, 356 A. 2d 293 (1976); *Bush v. Director*, 22 Md. App. 353, 324 A. 2d 162 (1974); *see also Austin v. Director*, 245 Md. 206, 225 A. 2d 466 (1967); *Mastromarino v. Director*, 244 Md. 645, 224 A.. 2d 674 (1966); *Director v. Daniels*, 243 Md. 16, 221 A. 2d 397 (1966); and the rules of discovery are generally applicable thereto. *McCloskey v. Director*, 245 Md. 497, 226 A. 2d 534 (1967); *Director v. Daniels, supra.* The case law of this State makes it manifest, in a defective delinquency proceeding, unlike other civil cases, that the State's Attorney who represents the State and, hence, Patuxent Institution, is not under a duty to answer interrogatories if the information sought is obtainable by an examination of the Patuxent records on the particular alleged defective delinquent. *Gray v. Director*, 245 Md. 80, 224 A. 2d 879 (1966); *Walker v. Director*, 6 Md. App. 206, 250 A. 2d 900 (1969). Moreover, the General Assembly has statutorily authorized counsel's access to the records of Patuxent. Md. Ann. Code art. 31B, § 8 (b), provides in pertinent part:

> " . . . Counsel for the person and for the State shall have access to all records, reports and papers of the institution relating to the person, and to all papers, in the possession of the court bearing upon the person's case, including a copy of the report of the institution."

In the case *sub judice*, the appellant filed thirty (30) numbered interrogatories [1] directed to the State of Maryland which were served on the State's Attorney for Prince George's County. The State excepted to all but one of the interrogatories and the appellant, in turn, took issue with the State's refusal to answer. Hearings on appellant's

---

1. We note that the *actual* number of interrogatories exceeded thirty. *See* Md. Rule 417 a 2. *See also* Griffith v. Polakoff (Super. Ct. of Balt. City), *Daily Record*, Oct. 9, 1956. The State did not except to the interrogatories, and the matter was not passed upon by the trial court, nor do we consider it.

exceptions were held before Judge Mathias, who sustained the State's position.[2] Appellant asserts to us that the judge's failure to require the State to answer thirteen of the interrogatories is patent error. We, however, have a different outlook. As we see it, the answers to the thirteen questions may have been contained within the appellant's records as maintained at the institution, and, thus, under *Gray, Walker,* and Md. Ann. Code art. 31B, § 8 (b), the information may have been available to appellant for his examination.

The transcripts of the hearings held concerning the exceptions to the interrogatories indicate that appellant's attorney did examine the appellant's records at Patuxent, but did not thoroughly copy them. The reason he did not do so is not delineated. We infer from the discussions among the judge and both counsel at the hearings that appellant endeavored, through the interrogatories, to place the burden, *i.e.,* cost, time, and effort, of copying the records, on the State's Attorney's office rather than on the defense.

We further note that at the hearings, and in appellant's brief, it is asserted that some information sought per the interrogatories was not in the Patuxent records at least at the time he saw them. There was no showing that counsel inquired at Patuxent about any additional information, or that the institution itself had any information not disclosed to him, except the report of an examiner which was subsequently added to the file. In fact, appellant's counsel conceded that he had read the Patuxent records quite some time before the hearing, and he could not recall whether some of the desired information was within the records that he saw. The difficulty with a hearing on exceptions in such a situation, as in the case now before us, is that the hearing judge was placed in the position of not knowing what information could be gleaned from an examination of the institutional records. Thus, he must rely upon the representation either of the defense counsel, or the State,

---

**2.** *See* Md. Rule 417 g (effective January 1, 1976) in reference to the necessity for a hearing after the parties have unsuccessfully tried less formal means of obtaining the information.

unless the judge orders the production of the records for his own perusal. The latter course could result in virtual strangulation of the court's productivity and, simultaneously, shift to the judge the burden that Md. Ann. Code art. 31B, § 8 (b), *Gray* and *Walker*, removed from the State's Attorney's shoulders.

Because an alleged defective delinquent must exhaust the special statutory right given to him by Code art. 31B, § 8 (b), before other civil discovery procedures are fully available to him, we believe that the proper approach by a trial judge, one which satisfies the discovery rules, as well as due process, and at the same time is in keeping with *Gray* and *Walker*, may be stated thusly:

> If the counsel for the alleged defective delinquent certifies to the hearing judge that the information sought by way of interrogatories (Md. Rule 417) has been specifically requested from the institution, but has not been made available to him in the institutional reports, records, and papers, the court should order the State to answer the questions propounded, provided of course, the questions are otherwise proper. If the State, on the other hand, believes that it is able to demonstrate that the sought information is indeed available from an examination of the Patuxent reports, records, and papers, it may except to the interrogatories, and the dispute would then have to be resolved by the court.

We repeat what the Court of Appeals stated succinctly in *Director v. Daniels*, 243 Md. at 44, 221 A. 2d at 413, and reiterated in *McCloskey v. Director*, 245 Md. at 505, 226 A. 2d at 539:

> ". . . [A defendant in a defective delinquency proceeding] has available to him all discovery procedure permitted under the Maryland Rules in civil cases, which is much broader than in criminal cases, including the taking of depositions, the use of interrogatories and the demands for admissions of facts."

In other words, a defendant in a defective delinquency case, who believes that his defense warrants the obtaining of information beyond that revealed by an examination of the institutional records, reports, and papers, may invoke the same plenary discovery rule usage that is available to other civil litigants.

We are not, however, to be understood as holding that all the copious means of discovery permitted by the rules of procedure are automatically triggered and allowed in each case. As in other types of civil litigation, when it is apparent to the trial court that discovery is being utilized for the purpose of harassing or is oppressive, as by the placing of almost insurmountable roadblocks in the path of the State, the court may, pursuant to Rule 406 and Rule 422 a 3, pass a protective order employing one or more of the alternatives sanctioned by Rule 406. *See Stein v. Overlook Joint Venture*, 246 Md. 75, 227 A. 2d 226 (1967).

In the instant case, the only thing before Judge Mathias was the bare statement of appellant's counsel that the information requested by way of written interrogatories was not available from a review of Patuxent's records. The bare statement will not suffice. Judge Mathias properly overruled the appellant's exceptions to the State's declination to answer the interrogatories.

## II.

The Diagnostic Staff Report that was submitted to the court in accordance with Md. Ann. Code art. 31B, § 7 (a) was signed, as required by the same statutory section, by a medical physician, a psychiatrist, and a psychologist. The report read:

> "This patient and his records were presented at the staff conference on November 26, 1974, where he was interviewed. It was felt that he was an intellectually dull emotionally unstable person, who easily looses [sic] control of himself in stressful situations. He appears to be impulsive with an

underlying hostility and aggressiveness which renders him to be a distinct danger to society and has shown persistent, aggravated antisocial behavior with a propensity toward criminal activity. Consequently, he fulfills the criteria for being a Defective Delinquent and his commitment to Patuxent Institution is recommended."

When the staff psychologist who had signed the report testified at the defective delinquency hearing, he said that there were present at the staff conference, " . . . Dr. Tasony [a psychiatrist], myself, the examining social worker, and several other psychologists and psychiatrists, I don't remember who at this point." Subsequently, he expanded the list of persons present so as to include Dr. Sarongon, the medical physician who signed the report. On cross-examination, the psychologist said that there was a total of " . . . six to twelve, somewhere in that area," who were in attendance at the staff conference. Appellant argues that the report from Patuxent was improperly admitted because it was not demonstrated that the report was that of the opinion of the majority of those present when appellant appeared before the staff.

Md. Ann. Code art. 31B, § 7 (a), provides, in pertinent part:

"Any such examination shall be made by at least three persons on behalf of the institution for defective delinquents, one of whom shall be a medical physician, one a psychiatrist, and one a psychologist. They shall assemble all pertinent information about the person to be examined, before proceeding therewith, including a complete statement of the crime for which he has been sentenced, the circumstances of such crime, the court in which he was sentenced, the nature of the sentence, copies of any probation or other reports which may have been made about him, and reports as to his social, physical, mental and psychiatric

condition and history. On the basis of all the assembled information, plus their own personal examination and study of the said person, they shall determine whether in their opinion, or in the opinion of a majority of them, the said person is or is not a defective delinquent. . . ."

Appellant contends that while the statute requires "at least three persons" to examine the alleged defective delinquent on behalf of the institution, that when more than three perform the task a majority of those so acting must execute the report. One need not be an Einstein to be aware of the fact that three is not a majority of either six or twelve.

The statute mandates only that at least three persons, each with expertise in a separate specified field, examine the person referred by the court in order to determine whether the person is a defective delinquent within the ambit of Md. Ann. Code art. 31B, § 5. The legislation does not necessitate that more than the three persons of specified disciplines examine the person. Two of the three must agree, so that a majority point of view is reported to the court.

Cross-examination, in addition to a review of the institutional records, and other discovery methods, assures the appellant adequate protection from the admission into evidence of a report which constitutes a finding and recommendation of less than a majority of those participating in the evaluation. Our perusal of the record before us fails to reveal that appellant utilized any of the enumerated methods in order to ascertain whether the majority of those present at the staff conference concurred in the result. We note that in the instant case the staff psychologist was not asked by the State or the defense whether the majority concurred in the conclusion that appellant was a defective delinquent. Moreover, the letter of transmittal accompanying the Diagnostic Staff Report states flatly that the report, "is the opinion of the staff of this institution." "[T]he opinion of the staff," of necessity, represents a majority and, therefore, complies fully with the statute.

### III.

Applicant also sees error in the trial court's allowing the staff psychologist to testify, over objection, that " . . . within a reasonable degree of medical certainty . . ." the appellant met the definition of a defective delinquent. At the trial, the appellant advanced the theory that the witness, a psychologist, could not state an opinion grounded on a degree of medical certainty.

Chief Judge Murphy, for this Court, in *Sherrill v. State*, 14 Md. App. 146, 158, 286 A. 2d 528, 534-35 (1972), strongly implied that a psychologist was not qualified to answer a question calling for a medical diagnosis, and that such an answer must be provided by a medically trained person in order to be admissible in evidence. *See also Spann v. Bees*, 23 Md. App. 313, 327 A. 2d 801 (1974); *Saul v. State*, 6 Md. App. 540, 549, 252 A. 2d 282, 286 (1969).[3]

A psychologist is "[a] person trained to perform psychological analysis, therapy, or research," *i.e.*, in the sciences of mental processes and behavior. *The American Heritage Dictionary* (1975). A psychiatrist, on the other hand, is "[a] licensed physician specially trained to practice psychiatry," *i.e.*, the medical study, diagnosis, treatment, and prevention of mental diseases and disorders. *The American Heritage Dictionary* (1975); *Webster's New Int'l Dictionary* (2d ed. 1947). Both professionals focus on the psyche, yet each profession may analyze the mental problems from different vantage points.

While it is incorrect to pose a question based on "medical certainty" to a psychologist, we observe no reversible error under the circumstances of this case. The Staff Diagnostic Report, signed by a medical physician, by a psychiatrist, and by the witness, a psychologist, concluding that the appellant was a defective delinquent was in evidence. That the psychologist based his answer to a question propounded at

---

**3.** The Court of Appeals in State v. Tull, 240 Md. 49, 212 A. 2d 729 (1965), rejected the federal rule relative to the "medical" testimony by "qualified" psychologists.

trial, on a "medical certainty" did not strengthen the Patuxent report one iota. Furthermore, since this was a non-jury trial Judge Mathias, when he weighed the evidence in order to determine whether the State had met its burden of proving by a preponderance that appellant was a defective delinquent, was perfectly capable of separating the wheat from the chaff.

*Judgment affirmed.*