601 A.2d 1127

Mathew K. KRIKSTAN

v.

Susan C. KRIKSTAN.

No. 697, Sept. Term, 1991.

Court of Special Appeals of Maryland.

Feb. 27, 1992.

Deborah E. Reiser (Deckelbaum, Ogens & Fischer, Chartered, on the brief), Bethesda, for appellant.

John M. Quinn (Kathleen M. Dumais and Quinn & McAuliffe, on the brief), Rockville, for appellee.

Argued before BISHOP, ALPERT, and ROSALYN B. BELL, JJ.

BISHOP, Judge.

Appellant/cross-appellee, Mathew K. Krikstan ("Mr. Krikstan"), the custodial parent of two minor children born as a result of his marriage to appellee/cross-appellant, Susan C. Krikstan ("Ms. Krikstan"), filed a Complaint for Child Support in the Circuit Court for Montgomery County requesting, *inter alia*, that he be awarded support and maintenance of the parties' minor children. A hearing was held before a Domestic Relations Master on April 18, 1990. At the conclusion of the evidentiary hearing, the Master determined the total support obligation for the two children was $1,663, which included $300 per month for child care. A Visitation and Support Order was issued by the circuit court and filed on April 23, 1990 implementing the recommendations of the Master. The written Report and Recommendations of the Domestic Relations Master ("Master's Report") was filed on May 21, 1990. Thereafter, Ms. Krikstan filed her exceptions to the report, and Mr. Krikstan filed a response. Following a non-evidentiary hearing, the Circuit Court for Montgomery County granted Ms. Krikstan's exceptions and ordered her support payment reduced by $300 per month because, in the judgment of the court, the child care expense recommended by the Master was not necessary for the two boys. Mr. Krikstan noted an appeal, and Ms. Krikstan noted a cross-appeal.

### Procedural Posture

■ Prior to addressing the issues raised by the parties, we discuss a procedural matter regarding the scope of this appeal.

The Memorandum and Order of the circuit court granting Ms. Krikstan's exceptions to the Master's report was filed on January 2, 1991. On January 25, the parties filed a Joint Motion for Order Vacating Memorandum and Order of the Court requesting that the circuit court vacate its January 2,

1991 order and reinstate the same order, thereby allowing counsel to file timely motions to alter or amend the judgment. Apparently, a mistake was made in the clerk's office and Ms. Krikstan's copy of the Memorandum and Order was mailed to her counsel at Mr. Krikstan's counsel's address. The court granted the joint motion on January 28, 1991 thereby vacating the order of January 2, 1991 and reinstating it as of January 28. On February 4, 1991, Mr. Krikstan filed a motion to alter or amend the judgment. An order denying his motion was filed on February 7, 1991. Although the joint motion indicated that both parties wished to file motions to alter or amend, no such motion was filed by Ms. Krikstan.

The incongruities begin here because on February 22, 1991, according to Docket No. 37, Ms. Krikstan filed a response to Mr. Krikstan's motion to alter or amend and a memorandum of points and authority. This occurred fifteen days after the order of court denying Mr. Krikstan's motion. Further, on February 25, 1991, Docket No. 38 reads, "Order of Court (Hyatt, J.) denying Plaintiff's Motion to Al[ter] or Amend [J]udgment filed." This is virtually the same entry that appeared at February 7, 1991. To further complicate matters, on March 4, 1991, Mr. Krikstan filed a reply to Ms. Krikstan's response to his motion to alter or amend; this occurred after the motion had already been effectively denied two times.

Appellant's Notice of Appeal filed on March 6, 1991, reads: "Mathew K. Krikstan, Plaintiff, notices an appeal from the final judgment entered in this action on February 7, 1991." Appellee's Notice of Cross–Appeal reads: "Defendant, Susan C. Krikstan, notes her Cross–Appeal in this matter from the judgment entered in this action on February 7, 1991." Both the appeal and the cross-appeal are timely; however, they both indicate that the appeal is from the action of the court on February 7, 1991. The only action taken by the court on February 7, 1991 was to deny Mr. Krikstan's motion to alter or amend. Until recently we may have considered the only issue before this Court to be

whether the circuit court abused its discretion in denying Mr. Krikstan's motion to alter or amend. The Court of Appeals has decided, however, that limiting language in a notice of appeal should be deemed surplusage and ignored. *B & K Rentals v. Universal Leaf,* 319 Md. 127, 571 A.2d 1213 (1990) (Although appeal was taken from the denial of a motion to reconsider a grant of judgment notwithstanding the verdict, the Court of Special Appeals was not precluded from considering the propriety of the underlying decision on the merits.). Thus, we deem the language specifying the date of the judgment appealed from in the notices of appeal and cross-appeal to be surplusage, and we treat the appeal and cross-appeal as from the order of January 28, 1991, whereby the circuit court set the amount of support, not merely from the denial of the motion to alter or amend the judgment.

## Issues

Mr. Krikstan presents the following issues on appeal:
I. Whether the trial court abused its discretion in declining to allocate any child care expenses?
II. Whether the trial court's arithmetical calculations were in error even if the court correctly eliminated child care expenses?
Ms. Krikstan presents an additional issue on cross-appeal:
III. Whether the trial court erred in not retroactively dating the reduced child support obligation to May 1, 1990, the day her child support obligation commenced?

## Facts

Mathew and Susan Krikstan were married on August 3, 1973. Mr. Krikstan was granted an absolute divorce by Final Decree of the Circuit Court for Charles County (Bowling, J.) dated July 19, 1983. The terms of the parties' Separation Agreement ("Agreement") were incorporated by reference, but not merged, into the Final Decree. Two children were born as a result of the marriage—Zachary A. Krikstan, born February 4, 1974, and Joshua R. Krikstan,

born December 27, 1978. Pursuant to the Agreement, custody of the boys was awarded to Mr. Krikstan, with liberal visitation to Ms. Krikstan. The Agreement was silent with regard to child support. Despite that, between the years 1982 and 1985, Ms. Krikstan paid $200 per month for a babysitter for the children. Use and possession of the family home in Indian Head, Maryland was awarded to Mr. Krikstan, where he lived with the boys, until he purchased a home in Silver Spring with his new wife, in October 1986. In 1985, Ms. Krikstan had released her interest in the family home to Mr. Krikstan for the "sole consideration" of $1,500 cash, which Ms. Krikstan used for moving expenses when she went to live with her parents in Louisiana to attend college. When the house in Indian Head was sold in 1986, a profit of $24,000 was realized. Ms. Krikstan's share of the proceeds was not distributed to her, rather, it was apparently intended by the parties to help support the boys while Ms. Krikstan was in college.

After completing her education and receiving her degree, Ms. Krikstan returned to Maryland in October 1989 and accepted a position with her former employer, the Naval Ordinance Labs. Mr. Krikstan's Complaint for Child Support was filed shortly after Ms. Krikstan's return to this area.

At a hearing regarding support and visitation before Master R. Rosenkrantz, on April 18, 1990, the following facts were developed. At the time of the hearing, Zachary and Joshua were aged 16 and 11. Katherine, a daughter from Mr. Krikstan's second marriage was three at the time of the hearing. Before Katherine was born, Zachary and Joshua required child care because both Mr. Krikstan and his present wife were employed outside the home. Mr. Krikstan employed a babysitter for four or five hours a day before and after school, holidays, and vacations. After Katherine was born, Mr. Krikstan and his wife hired an *au pair* who lives with the family on a full time basis and cares for the children. The *au pair* makes certain that Joshua is up, dressed, has breakfast, and is prepared for school. She

takes him to the school bus. She transports both boys to and from extra-curricular activities, and she is present as a "contact" point during the day while the parents are at work. She is the children's caretaker for sick days, vacation days, and school holidays. Ms. Krikstan agreed at the hearing that child care was good, especially for Joshua, and she would not want him to be without it.

At the conclusion of the hearing, the Master applied the child support guidelines, Md.Fam.Law Code Ann. §§ 12–201 to 12–204 (1991), and determined that the basic child support obligation for the two children was $1,363. She further determined that $300 per month was an appropriate amount of child care to allocate to the children. Adding $300 to the basic support of $1,363, the Master arrived at a total support obligation of $1,663 per month, of which Ms. Krikstan was required to contribute 41% and Mr. Krikstan 59%.

A Visitation and Support Order was issued by the circuit court implementing the recommendations of the Master. Ms. Krikstan filed a Notice of Intent to File Exceptions. The Master's Report was filed, and Ms. Krikstan noted exceptions to it. She maintained, *inter alia,* that the Master erred by apportioning the cost of child care. Mr. Krikstan filed a response to the exceptions, and a non-evidentiary hearing was held in circuit court. After considering the Master's Report, Ms. Krikstan's exceptions, Mr. Krikstan's opposition, relevant portions of the proceedings before the Master, and oral arguments, the chancellor granted Ms. Krikstan's exceptions and reduced her support obligation by $300 per month from $682 to $382 commencing from January 1, 1991.

### Child Care Expenses

■ On appeal, Mr. Krikstan argues that the circuit court abused its discretion in declining to allocate any child care expenses. We agree and explain.

 As recently explained by the Court of Appeals in *Domingues v. Johnson*, 323 Md. 486, 593 A.2d 1133 (1991), it is the function of a chancellor to exercise his or her independent discretion when ruling in a case in which a domestic relations master has made recommendations. Although the chancellor may and should give consideration to the recommendations of the master, the final decision must be that of the chancellor. *Id.* at 492, 593 A.2d 1133. In reviewing a decision resulting from the independent judgment of the chancellor, we reverse only if it does not conform to law or constitutes an abuse of discretion. *Rock v. Rock*, 86 Md.App. 598, 607, 587 A.2d 1133 (1991). In the case *sub judice*, the chancellor improperly applied the law regarding expenses for child care, and we therefore reverse.

The law with regard to child care expenses is part of the child support guidelines and is set forth in the Family Law Article:

(g)(1) Subject to paragraphs (2) and (3) of this subsection, actual child care expenses incurred on behalf of a child due to employment or job search of either parent shall be added to the basic obligation and shall be divided between the parents in proportion to their adjusted actual incomes.

(2) Child care expenses shall be:

(i) determined by actual family experience, unless the court determines that the actual family experience is not in the best interest of the child; or

(ii) if there is no actual family experience or if the court determines that actual family experience is not in the best interest of the child:

1. the level required to provide quality care from a licensed source; or

2. if the custodial parent chooses quality child care with an actual cost of an amount less than the level required to provide quality care from a licensed source, the actual cost of the child care expense.

(3) Additional child care expenses may be considered if a child has special needs.

Md.Fam.Law Code Ann. § 12–204(g). Use of the child
support guidelines became mandatory, not merely permissi-
ble, on April 10, 1990 when Senate Bill 633, which amended
various sections of the Family Law Article including § 12–
204, was approved. 1990 Md.Laws ch. 58. Because the
evidentiary hearing before the Master was held on April 18,
1990, the 1990 amendments were in effect. The Master was
aware of the new law, and she began the hearing by
explaining her understanding of the recent statutory
changes. The Master specifically explained that the new
law created a rebuttable presumption that the amount of
support that resulted from application of the guidelines was
the correct amount of support. If she determined that
application of the guidelines was unjust, she was required
to make a written finding to that effect and state her
reasons for departing from the guidelines.

In her report the Master stated:

It is the opinion of the Master that the application of the ·
Guidelines is appropriate in this case.

* * * * * *

The plaintiff allocated $567.00 per month, ⅔ of the cost of
his au pair to his sons. There is clearly not that much
benefit to the boys. Zachary is a very mature and
responsible 16–year old. Joshua is 11. If the plaintiff
and his wife desire to have an au pair to provide full-time
care for their daughter, that is their decision. $300.00 a
month is more than sufficient to allow for supervision
when the boys are sick, for holidays and for summer
activities for Joshua. However, despite their age, these
boys do benefit from the services of the au pair and it is
the opinion of the Master that it is appropriate to allocate
$300.00 a month for this purpose.

In contrast, it was the opinion of the chancellor that no child
care expense was justified:

It is the judgment of this Court that the $10,468.00 per
year [for the services of an] aupair [sic] is not necessary
for the 11 year old and 16 year old children in light of the
fact that the Husband hired the aupair [sic] after the

birth of his daughter with his second wife. No clear evidence was shown to convince this Court that the aupair [sic] was retained for the care of the 11 year old and 16 year old boys and not for the care of the Husband's daughter to justify a contribution by the Wife of $300 a month to retain the aupair [sic].

As we have explained, it is within the discretion of the chancellor, in fact, it is required, that he or she make an independent determination of the issues. Here, however, the chancellor's independent exercise of discretion does not comport with the law.

The law requires that child care expenses *shall* be determined by actual family experience. § 12–204(g)(2). "Shall" generally denotes an imperative obligation inconsistent with the idea of discretion. *Carter v. Harris*, 312 Md. 371, 377, 539 A.2d 1127 (1988). In the case *sub judice*, the actual family experience includes an *au pair*. There was no evidence presented below from which it could be determined that the actual family experience was not in the best interest of the children, particularly the younger boy. Mr. Krikstan explained the services the *au pair* provides to the boys. Ms. Krikstan testified that child care was good, and she would not want Joshua to be without it. Because the actual family experience with regard to child care is in the best interest of the children, the chancellor was required to determine the child care expense by actual family experience. § 12–204(g)(2)(i). It was error for the chancellor to eliminate child care. The chancellor is not, however, bound by the monetary valuation of the Master. We will remand in order for him to make an independent evaluation and a proper award of child care expenses.

We address briefly, for purposes of the remand, Mr. Krikstan's argument that the chancellor made an arithmetical error when he deducted the entire amount of the child care expense, $300, from Ms. Krikstan's monthly support obligation. We agree that such a deduction does not appear to be in concert with the other calculations. Utilizing the guidelines, the Master determined the basic support obli-

gation for the two boys was $1,363, and, as a result of their adjusted actual incomes, the obligation should be divided 59% to Mr. Krikstan and 41% to Ms. Krikstan. The Master then determined that $300 per month was an appropriate allocation for child care expense, making a total support obligation of $1,663. The Master's addition of the child care expense to the basic support obligation to arrive at a total support obligation makes clear the Master did not intend for Ms. Krikstan to pay $300 per month for child care. Rather, the Master intended that the total support obligation, including child care, be satisfied 59% by Mr. Krikstan and 41% by Ms. Krikstan. Section 12–204(g) states that "actual child care expenses ... shall be divided between the parents *in proportion to their adjusted actual incomes.*" Md. Fam.Law Code Ann. § 12–204(g) (emphasis added). The Master only recommended that Ms. Krikstan pay 41% of $300, or $123 per month for child care. The chancellor has discretion to increase or decrease this figure, however, additions or deductions should be made from the total support obligation, because changing only Mr. or Ms. Krikstan's monthly obligation undercuts the support percentages.

### *Retroactivity*

The Visitation and Support Order issued by the circuit court and filed on April 23, 1990 provided that Ms. Krikstan's support obligation would commence and account from May 1, 1990. When the chancellor granted Ms. Krikstan's exceptions he indicated that the reduced support payments would commence and account from January 1, 1991. Ms. Krikstan contends that the chancellor erred in not retroactively dating the reduced child support obligation to May 1, 1990, the day Ms. Krikstan's obligation commenced. This issue may, of course, become moot as a result of action that may be taken by the chancellor upon remand. We comment to make clear that the law does not require that awards be retroactive. It provides only that: "The court may not retroactively modify a child support

award prior to the date of the filing of the motion for modification." Md.Fam.Law Code Ann. § 12–104(b). Ms. Krikstan possesses no right to restitution or recoupment following a modification of support; it is within the discretion of the chancellor to determine whether to make the award retroactive to the time of filing. *See Barr v. Barr,* 58 Md.App. 569, 588, 473 A.2d 1300 (1984), wherein we explained support is the obligation of a parent to a child, not the other parent, therefore, a parent who "overpays" possess no right to recoupment because that would presumably deprive the child of benefits already received.

## *Deviation From Guidelines*

█ Further, we do not agree with Ms. Krikstan's contention that the chancellor properly departed from the guidelines when he concluded that Ms. Krikstan's support obligation should be reduced. Family Law Article § 12–202 provides in pertinent part:

(a)(1) Subject to the provisions of paragraph (2) of this subsection, in any proceeding to ... modify child support, ... the court shall use the child support guidelines set forth in this subtitle.

. (2)(i) There is a rebuttable presumption that the amount of child support which would result from the application of the ... guidelines ... is the correct amount ... to be awarded.

(ii) The presumption may be rebutted by evidence that the application of the guidelines would be unjust or inappropriate in a particular case.

(iii) In determining whether the application of the guidelines would be unjust or inappropriate in a particular case, the court may consider:

1. the terms of any existing separation or property settlement agreement or court order, including any provisions for payment of mortgages or marital debts, payment of college education expenses, the terms of any use and possession order or right to occupy to the family home under an agreement, any direct payments made for

the benefit of the children required by agreement or order, or any other financial considerations set out in an existing separation or property settlement agreement or court order;

\* \* \* \* \* \*

(iv) 1. If the court determines that the application of the guidelines would be unjust or inappropriate in a particular case, the court shall make a written finding or specific finding on the record stating the reasons for departing from the guidelines.

2. The court's finding shall state:

A. the amount of child support that would have been required under the guidelines;

B. how the order varies from the guidelines;

C. how the finding serves the best interests of the child; and

D. in cases in which items of value are conveyed instead of a portion of the support presumed under the guidelines, the estimated value of the items conveyed.

In the case *sub judice,* the chancellor did not make a finding that application of the guidelines was "unjust or inappropriate." Moreover, he neither stated he was departing from the guidelines nor gave any reasons for such a departure. Because the chancellor did not follow the statutory procedure for deviating from the guidelines, we are inclined to infer that the chancellor did not intend to depart from the guidelines, but rather misunderstood the provisions of § 12–204(g) concerning child care expenses. If, however, the chancellor did intend to deviate from the guidelines, we direct that he comply with § 12–202(a)(2)(iv) and explain the reasons for this deviation upon remand.

JUDGMENT REVERSED AND CASE REMANDED FOR DETERMINATION IN ACCORDANCE WITH THIS OPINION. COSTS TO BE PAID BY APPELLEE/CROSS-APPELLANT.