678 A.2d 88

Margaret Long TANIS

v.

Michael S. CROCKER

No. 1131, Sept. Term, 1995.

Court of Special Appeals of Maryland.

June 26, 1996.

---

**6.** Unfortunately, the able trial judge who presided in this case did not have the benefit of the *Ebb* decision.

Michael J. Jacobs, Easton, for Appellant.

Harry A. Baumohl, Towson, for Appellee.

Before BISHOP, WENNER and DAVIS, JJ.

DAVIS, Judge.

This is an appeal from a modification of a child support order issued on February 19, 1995 by the Circuit Court for Queen Anne's County, increasing appellee's child support obligations from $750 per month to $1,032.19 per month, retroactive to September 12, 1994; ordering appellee to pay appellant $378.40 to satisfy appellee's arrearages; denying appellant's claim for additional child support arrearages, medical, dental, and hospital bills; equally apportioning all travel related expenses incurred in connection with appellee's visitation rights; denying both parties' claims for attorney's fees; equally dividing court costs between the parties; and establishing a procedure for garnishing appellee's wages should he fall more than thirty days behind in his support payments. Appellant was not satisfied that the trial court accurately calculated appellee's income for purposes of the child support guidelines and took exception to the trial court's failure to award her attorney's fees. As a result, appellant noted this appeal, presenting the following issues for our review:

I. Did the trial court err and abuse its discretion when it failed to make the increase ordered in child support retroactive to the date of the filing of the petition, as allowed under MD.CODE ANN., FAM. LAW § 12–104 (1988)?

II. Did the trial court err when it refused to require the production of appellee's income tax returns and other income-related information, where, in making its determination on child support, the trial court was required, by MD.CODE ANN., FAM. LAW § 12–203(b) (1989), to consider the income tax returns and related financial information?

III. Did the trial court err and abuse its discretion when it failed to award to appellant attorney's fees, where the evidence showed, and the trial court found, a long-standing pattern of appellee's refusal to increase his child support payments to an appropriate level, consistent with the child support guidelines?

IV. Did the trial court err when it failed to include appellee's full income in its child support computations?

V. Did the trial court err when, for purposes of the child support guidelines, it failed to add to appellee's income the value of appellee's personal use of a company car, as declared by appellee in his income tax returns?

VI. Did the trial court err when it failed to consider properly appellee's share of the capital gains from the sale of his home as income for purposes of the child support guidelines, and as a liquid asset in its determination on the requested award of attorney's fees?

## FACTS

Appellant, Margaret Long Tanis, and appellee, Michael S. Crocker, were married on June 7, 1975. The parties had two children—Taylor Ashley Crocker, born on February 26, 1979, and Christopher Long Crocker, born on July 1, 1984. On March 8, 1987, the parties entered into a separation agreement and were divorced on August 16, 1988. After their divorce, appellant married Thomas Tanis and appellee married Julie Crocker, who were married to each other before their marriages to appellant and appellee.

When the parties separated, appellant took physical custody of the children pursuant to their agreement. This arrangement was later modified by an amendment to the separation and property agreement to accommodate a change in appellee's visitation requirements brought about by appellant's moves to Philadelphia, Pennsylvania; Atlanta, Georgia; and

Sarasota, Florida. Beginning in March, 1987, appellee paid appellant $750 per month in child support, $375 for each child.

Appellant did not seek a change in, and appellee did not voluntarily adjust, appellee's child support obligations until April 1994. At that time, appellant filed a petition with the trial court asking that she be awarded child support payments that met the child support guidelines.[1] Subsequent to the first day of a two-day hearing, held on September 12, 1994 and November 25, 1994, at the court's suggestion appellee increased his child support payments to $850 per month and placed an additional $95 per month into an escrow account.[2]

Appellee is employed as president of the John M. Crocker Co., Inc., a family-owned mechanical and electrical contracting business. The parties dispute appellee's salary—appellee contending he is paid $1,000 per week for fifty-two weeks; appellant alleging that appellee is paid $1,100 per week for fifty-three weeks. The discrepancy, in part, centers around a decision by the Crocker Company to begin paying appellee $1,000 per week effective October 20, 1993. Appellant argued before the trial court that appellee's salary should be treated as $1,100 per week because it was only scaled back to $1,000 per week after appellee received a certified letter from appellant's counsel on October 15, 1993, stating that appellant was seeking an increase in child support. The trial court used $1,100 per week over fifty-two weeks as appellee's income when using the child support guidelines. The trial court also stated its desire to ascribe value to appellee's use of a company car, but found that appellant did not produce evidence of its value at the modification hearing.

---

1. When appellant and appellee entered into their settlement agreement, Maryland's child support guidelines were not yet passed by the legislature. The figure established by the settlement agreement was substantially below the amount appellant would have been entitled to according to the guidelines passed a short time later.

2. The additional money represented travel money to which appellee did not think appellant was entitled, but which he understood she may have been—hence, the escrow account.

Appellee also earned an annual salary from the United States Army Reserve that ranged from $13,000 per year to less than $12,000 per year. Appellant alleged at the hearing that appellee's salary for 1993 was already above $12,000, as evidenced by pay stubs appellee received from the Reserves. Appellee, however, noted that the figure shown as gross pay reflected money included in his pay checks that was a reimbursement for out-of-pocket expenses. The trial court found that $12,000 per year was the more reliable figure. Finally, appellant alleged that appellee had derived capital gains from the sale of his house. The trial court did not include any capital gains in its calculation of appellee's income because it noted in its opinion that appellee contended that he realized no capital gains from the sale. Appellee's total gross monthly income (Crocker Co. salary plus U.S. Army Reserves pay) for the purpose of the guidelines was computed to be $5,766.67.

Appellant has been sporadically employed as a registered nurse since 1987 because of the moves she has made since the divorce. At the time of the modification hearing, appellant was employed as a nurse and the trial court found that her income was $2,187 per month. Recognizing that appellant received additional income from a rental property she and her husband maintained, the trial court found her gross monthly income to be $2,395.67. The trial court then determined that, pursuant to the guidelines, appellee's child support payments should be $1,032.10 per month.

During the course of the modification hearing appellant argued that appellee owed her arrearages for unpaid child support and past medical, dental, and hospital bills. The parties also disagreed over who was responsible for the children's travel expenses incurred during visits to appellee. Finally, both parties claimed to be entitled to legal fees due to the actions of the other.

The trial court's January 12, 1995 opinion and order retroactively increased appellee's child support obligation to $1,032.10 per month from September 12, 1994. As a result, appellee owed appellant the difference between the amount appellee

paid from September 1994 through January 1995, as well as the $378.40 ordered by the trial court. The order also found that appellee did not owe appellant for any past due medical, dental, or hospital bills. Furthermore, the order mandated that the children's travel expenses for visitations with appellee would be shared equally by the parties. Finally, the order denied legal fees to both parties and equally apportioned court costs between them.

## I

Appellant initially contends that the trial court erred when it failed to make its increase in appellee's child support obligation retroactive to April 19, 1994—the date appellant filed her petition with the court—as opposed to September 12, 1994. Appellant argues that, prior to the modification of appellee's support payments, appellee was paying significantly less child support than he owed because the payments established by the settlement agreement were substantially less than they would have been if determined by the child support guidelines. Appellant asserts that appellee's awareness of this fact, coupled with his resistance to the increase of his child support payments, required the trial court retroactively to award the increase to the date of appellant's petition—April 19, 1994.

Appellant claims that MD.CODE ANN., FAM. LAW § 12–104(b) (1988) and MD.CODE ANN., FAM. LAW § 12–101(a)(1) (1994) were enacted by the legislature with the intent that parties be prevented from deliberately delaying modification proceedings in order to stay an increase in child support due the custodial parent.[3] This is especially so, appellant argues, when, as here, the custodial parent is obviously due an increase in support. As a result, appellant asserts that the trial court's failure

---

**3.** In appellant's brief, she cites MD CODE ANN., FAM. LAW § 12–101(2) (1994) as standing for this proposition. Section 12–101(2), however, requires the retroactive application of a modification of child support sought by a child support agency. Section 12–101(a)(1) applies to applications made by parties. We think appellant intended to cite (a)(1).

retroactively to modify appellee's payments to April 19, 1994 was an abuse of discretion.

■ MARYLAND CODE ANNOTATED, FAMILY LAW § 12–101(a)(1) is not applicable to this case. It states:

Unless the court finds from the evidence that the amount of the award will produce an inequitable result, for an *initial pleading* that requests child support *pendente lite*, the court shall award child support for a period from the filing of the pleading that requests child support.

*Id.* (emphasis added). This subsection only applies to initial pleadings seeking *pendente lite* child support. In the case *sub judice*, appellant requested a modification of an existing child support obligation.

■ MARYLAND CODE ANNOTATED, FAMILY LAW § 12–104(b) governs the actions of the trial court in this case. It states:

The court may not retroactively modify a child support award prior to the date of the filing of the motion for modification.

*Id.* Section 12–104(b) makes clear that it is within the trial court's discretion whether and how far retroactively to apply a modification of a party's child support obligation up to the date of the filing of the petition for said modification. In *Krikstan v. Krikstan,* 90 Md.App. 462, 601 A.2d 1127 (1992), the appellant was awarded a downward modification of her support payments owed to her husband. The trial court, however, did not retroactively apply the order to the date the appellant filed for modification. The appellant in that case urged this Court to find that § 12–104(b) required the trial court retroactively to apply the award to the date of the filing of her petition. This Court disagreed and stated that:

[T]he law does not require that awards be retroactive. It provides only that: "The court may not retroactively modify a child support award prior to the date of the filing of the motion for modification." [Appellant] possesses no right to restitution or recoupment following a modification of support; it is within the discretion of the chancellor to deter-

mine whether to make the award retroactive to the time of filing.

*Id.* at 472–73, 601 A.2d 1127 (citations omitted). *See also Reuter v. Reuter,* 102 Md.App. 212, 242, 649 A.2d 24 (1994). Likewise, in this case the trial court was not required to award the increase in child support from April 19, 1994—the date appellant filed her petition for modification.

■ Therefore, the only period we must review in determining whether the trial court abused its discretion is from September 12, 1994, rather than April 19, 1994. The trial court set September 12, 1994, as the starting date of the modification because it did not desire that appellee benefit from the ten-week delay between the first day of the modification hearing, September 12, 1994, and the second day, November 25, 1994. Appellant urges this Court to find that the trial court abused its discretion when it failed to apply the modification to April 19, 1994, because of appellee's history of underpaying child support for the four years prior to the modification. Appellee, however, was not underpaying his support obligation for the four years prior to the modification. Rather, his child support payment was set below the level the child support guidelines would have established. As appellant presents no other evidence that the trial court abused its discretion, and we can discern none in the record, the trial court's decision to apply the modification of appellee's child support obligation from September 12, 1994 was not in error.

## II

Appellant next contends that the trial court erred for two reasons when it failed to require appellee to produce income tax returns and other income related information for the purpose of establishing appellee's income. First, appellant argues that MD.CODE ANN., FAM. LAW § 12–203(b) (1989) requires a trial court to consider the income tax returns of the parties when making a child support determination. Second, appellant asserts that the trial court abused its discretion when it granted appellee's motion for protective order and

denied her motion to compel discovery. As a result, appellant claims that the trial court erred when it granted appellee's motion for protective order on October 18, 1994, and refused to compel appellee to produce the following: unredacted income tax returns from January 1, 1990, up to and including 1994; information regarding a home mortgage for which appellee had allegedly applied; and information regarding the sale of appellee's home.

■ Appellant initially asserts that the trial court was required to order appellee to produce unredacted copies of his tax returns from 1990 to 1994 by MD.CODE ANN., FAM. LAW § 12–203(b) (1989). It states:

> (2)(i) Except as provided in subparagraph (ii) of this paragraph, suitable documentation of actual income includes pay stubs, employer statements otherwise admissible under the rules of evidence, or receipts and expenses if self-employed, and copies of each parent's 3 most recent federal tax returns.

> (ii) If a parent is self-employed or has received an increase or decrease in income of 20% or more in a 1–year period within the past 3 years, the court may require that parent to provide copies of federal tax returns for the 5 most recent years.

*Id.* Appellant argues that § 12–203(b)(2)(i) required the trial court to consider each of appellee's pay stubs, receipts and expenses (because appellee is self-employed), and his three most recent federal income tax returns. We disagree. Section 12–203(b)(2)(i) simply lists several documents that are suitable documentation of a parent's actual income. In order to establish his or her actual income, a party to a child support case could produce any one, two, or all three of the items listed in § 12–203(b)(2)(i). Additionally, § 12–203(b)(2)(ii) states that a trial court *may*, when certain criteria are met, require a party to produce income tax returns for his or her last five years. It is not mandatory. Section 12–203(b) does not require that a parent's income tax returns be considered in order to resolve a dispute concerning that parent's income.

■ Appellant also alleges, however, that it was an abuse of discretion for the trial court to grant appellee's motion for protective order and bar appellant from obtaining the financial information she sought. As appellant concedes, we review the trial court's decision to grant the motion for protective order only to determine whether the trial court abused its discretion when it rendered its decision. *See Price v. Orrison,* 261 Md. 8, 10, 273 A.2d 183 (1971). In the case *sub judice,* appellant does not provide this Court with evidence that the trial court abused its discretion when it denied appellant's motion to compel discovery and granted appellee's motion for protective order.[4] From the record, we are able to discern that appellee's motion sought protection from appellant's discovery requests regarding his income tax returns because appellee's spouse was the former wife of appellant's spouse and that information obtained from appellee's tax returns could be used by appellant's spouse during another proceeding. Appellee based his request that he not be ordered to produce documents relating to an alleged loan application and the sale of his previous home on the grounds that the information was irrelevant and that appellant's request was designed to "annoy, harass, oppress and create an undue burden on [appellee]." The trial court apparently granted appellee's motion for the reasons stated therein.

■ MARYLAND RULE 2–403(a) governs the application for protective orders. It states:

On motion of a party or of a person from whom discovery is sought, and for good cause shown, the court may enter any order that justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (1) that the discovery not be had, . . . .

---

4. Appellant does suggest that the trial court's decision to grant appellee's motion for protective order was an abuse of discretion because MD CODE ANN, FAM. LAW § 12–203(b) required disclosure of appellee's income tax returns, but because we have already noted that this was not error, we may discount this argument.

Hence, the trial court did not abuse its discretion when it granted appellee's motion as long as good cause was shown and the order was issued to protect appellee from annoyance, embarrassment, oppression, or undue burden or expense.

Our research has uncovered little precedent in Maryland appellate decisions. We do note, however, that MD. RULE 2–403(a) is based in large part on Federal Rule of Civil Procedure (F.R.C.P.) 26(c).[5] As a result, recognizing that when interpreting a Maryland Rule that is similar to a Federal Rule of Civil Procedure this Court may look for guidance to federal decisions construing the corresponding federal rule, *Pleasant v. Pleasant,* 97 Md.App. 711, 732, 632 A.2d 202 (1993), we may examine the interpretation federal courts have lent to F.R.C.P. 26(c) when we consider MD. RULE 2–403(a).

The party seeking a protective order pursuant to F.R.C.P. 26(c)

> has the burden of making a particular and specific demonstration of fact, as distinguished from general, conclusory statements, revealing some injustice, prejudice, or consequential harm that will result if protection is denied.

*Blum v. Schlegel,* 150 F.R.D. 38, 41 (W.D.N.Y.1993). *See also Blankenship v. Hearst Corp.,* 519 F.2d 418, 429 (1975); *Johnston Dev. Group, Inc. v. Carpenters Local Union No. 1578,* 130 F.R.D. 348, 352 (D.N.J.1990). Additionally, federal courts have made clear that protective orders are not to be granted liberally. In *Bridge C.A.T. Scan Assoc. v. Technicare Corp.,* 710 F.2d 940 (2d Cir.1983), the Second Circuit Court of Appeals stated that:

---

**5.** F.R.C.P. 26(c) states:
> Upon motion by a party or by the person from whom discovery is sought, ..., and for good cause shown, the court in which the action is pending ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (1) that the disclosure or discovery not be had; ....

This is almost identical to MD. RULE 2–403(a).

Rule 26 ... is not a blanket authorization for the court to prohibit disclosure of information whenever it deems it advisable to do so, but is rather a grant of power to impose conditions on discovery in order to prevent injury, harassment, or abuse of the court's processes.

*Id.* at 944–45 (citations omitted). Given the liberality with which discovery rules are to be construed in Maryland, *Kelch v. Mass Transit Administration,* 287 Md. 223, 229–30, 411 A.2d 449 (1980), we are persuaded that the principles stated in *Blum* and *Bridge C.A.T. Scan Assoc.* should be applied to our analysis of the trial court's actions taken pursuant to MD. RULE 2–403(a).

■ Also guiding our review of the trial court's conduct is this Court's previous review of former MD. RULE 406, which governed the issuance of protective orders. In *Richardson v. Director, Patuxent Institution,* 31 Md.App. 468, 356 A.2d 624 (1976), we stated

[W]hen it is apparent to the trial court that discovery is being utilized for the purpose of harassing or is oppressive, as by the placing of almost insurmountable roadblocks in the path of the State, the court may, pursuant to Rule 406 and Rule 422 a 3, pass a protective order employing one or more of the alternatives sanctioned by Rule 406.

*Id.* at 473, 356 A.2d 624 (citations omitted). The use of the language "almost insurmountable" in the opinion indicates that this Court intended a protective order to be utilized in limited circumstances. It is in this light that we examine the trial court's decision to grant appellee's motion for protective order.

■ In this case, appellee argued that his spouse's relationship to appellant's spouse, and the fact that appellee already had W–2 statements and payroll sheets that detailed his income, made appellant's request for his income tax returns oppressive and placed an undue burden of production upon him. Appellee did inform the trial court of the relationship between his spouse and appellant's spouse. Otherwise, however, appellee failed to state how the protective order was required by justice to protect him from oppression and an

undue burden. Appellee's W–2 statements and payroll sheets did not provide appellant with the same information that his income tax statements would—for instance, income from investments and/or properties. Because production of appellee's income tax returns could provide appellant with information she did not have, the request was neither oppressive nor placed an undue burden on appellee. Consequently, the trial court's decision to grant appellee's motion with respect to his income tax returns was an abuse of discretion because appellee did not demonstrate "good cause" for the issuance of the order.

Appellee also argued that appellant's request that he produce documentation of an alleged loan application and documentation concerning the sale of his previous home was intended to annoy, embarrass, and oppress him, as well as place an undue burden on him. As a result, appellee asked the trial court to issue a protective order relieving him of the obligation to produce the requested documentation. In this respect, appellee did no more than issue a general, conclusory statement that parroted the language of Md. Rule 2–403(a) and, consequently, failed to meet his burden of production in this matter as stated in *Blum, Blankenship,* and *Johnston Dev. Group, Inc.,* which we have adopted. As a result, with respect to appellant's request that appellee produce documentation regarding his loan application and the sale of his house, the trial court also erred when it granted appellee's motion for protective order.[6]

### III

Appellant further contends that the trial court erred when it failed to award to appellant counsel fees incurred in association with her petition to modify appellee's child support obligation. Appellant argued that the evidence showed, and the

---

**6.** We note that during the November 25, 1994 hearing on the matter, appellee denied having made an application for a loan to build a new home. If this is the case, then, of course, appellee could respond to appellant's document request that it does not exist.

trial court found, a longstanding pattern of appellee's refusal to increase his child support payments to a level commensurate with the child support guidelines. His refusal voluntarily to increase his payments is, appellant asserts, the only reason she was compelled to prosecute her action in court. Additionally, appellant argues that the trial court incorrectly found that she and appellee were in a substantially similar financial condition. As a result, appellant claims that appellee should have been required to pay her attorney's fees and the trial court's failure to make him do so was an abuse of discretion.

 Initially, we note that the decision not to award attorney's fees is one that lies within the sound discretion of the trial court and will not be disturbed absent a showing of an abuse of that discretion. *See Walsh v. Walsh*, 95 Md.App. 710, 720, 622 A.2d 825 (1993), *rev'd on other grounds*, 333 Md. 492, 635 A.2d 1340 (1994). In its January 12, 1995 opinion and order, the trial court stated that an award of attorney's fees, which both parties asked for, was controlled by MD.CODE ANN., FAM. LAW § 12–103 (1994). After determining that both parties were permitted to request an award of attorney's fees pursuant to § 12–103(a), the trial court determined whether the parties were entitled to such an award. In doing so, it considered the criteria listed in § 12–103(b):

> (b) Before a court may award costs and counsel fees under this section, the court shall consider: (1) the financial status of each party; (2) the needs of each party; and (3) whether there was substantial justification for bringing, maintaining, or defending the proceeding.

The trial court found that the financial status and needs of both parties were substantially the same—"Neither party has greater needs or ability than the other to pay anything on their opponent's counsel fees. Their desire to have the court award their attorney's fees against their ex-spouse is primarily punitive." The trial court also found that the parties were substantially justified in bringing and defending the petition, respectively—"In sum, neither party lacked substantial justification for taking the actions and positions they did...."

**578**

After reaching the above findings, the trial court held that neither party was entitled to an award of attorney's fees.

■ Appellant asserts that the trial court abused its discretion when it found that both parties were justified in acting as each did during the proceedings. Appellant claims that appellee should have known that an application of the child support guidelines would require him to pay more in child support to appellant than he was prior to her April 19, 1994 petition. Appellant contends that appellee should have turned over all documents relating to his income and allowed appellant to plug this information into the child support guidelines in order to arrive at his support payment. We disagree.

The trial court's finding that appellee was substantially justified in defending the action was not an abuse of discretion. The realization that his child support obligation would be increased by the guidelines did not compel appellee to refrain from mounting a defense—he was entitled to dispute the level of his income. It is clear from the record that the parties legitimately disputed the level of appellee's income. Appellee received income from the U.S. Army Reserves, but the precise amount of income received was disputed because appellee claimed that a portion of his paychecks actually represented reimbursement for expenses. Additionally, appellant contended that appellee had deliberately reduced his wages by $100 per week when he discovered appellant was seeking a modification of child support. Finally, as noted above, there were issues regarding the value of appellant's use of an automobile furnished by the Crocker Company and whether appellee received any capital gains from the sale of a house. Clearly, the parties disputed facts that were material to the child support determination. Consequently, the trial court's determination that appellee was substantially justified in defending the action was not an abuse of its discretion.

■ Appellant also argues that the trial court's determination that she and appellee were in a similar financial situation was clearly erroneous. This Court's decision that the trial court erroneously granted appellee's motion for a protective

order impacts the trial court's decision regarding attorney's fees. The court should have had before it more information concerning appellee's financial condition at the time it made its ruling. Consequently, we shall vacate the trial court's decision not to award attorney's fees to appellant so that it may reconsider whether it should do so in light of any new financial data recovered by appellant's discovery requests.

## IV

Appellant also contends that the trial court erred when it failed to include all of appellee's income in its child support computations because it allegedly excluded both one week of paid vacation from appellee's Crocker Company salary and a part of appellee's military reserve pay. Appellant claims that appellee received fifty-three weeks pay from the Crocker Company rather than fifty-two, as the trial court found, and that the trial court, therefore, excluded $1,100 from appellee's annual salary. Additionally, appellant states that the trial court erred when it determined that appellee's salary from the U.S. Army Reserves was $12,000 when his total salary as of the hearing was already $12,153.48. As a result, appellant asserts that the trial court's child support computations were incorrect.

The trial court's determination of appellee's salary from both the Crocker Company and the U.S. Army Reserves is a finding of fact and as such will only be reversed if clearly erroneous. *See* Md. Rule 8–131(c) (1996); *Van Wyk, Inc. v. Fruitrade Int'l, Inc.,* 98 Md.App. 662, 668–69, 635 A.2d 14 (1994). So long as there is competent material evidence to support the trial court's finding, it will not be disturbed on appeal. *Nixon v. State,* 96 Md.App. 485, 491–92, 625 A.2d 404, *cert. denied,* 332 Md. 454, 632 A.2d 151 (1993). In this case, there is evidence on the record that supports the trial court's findings regarding appellee's salaries.

Appellee's testimony concerning his salary from Crocker Company presented the trial court with conflicting

evidence. Appellant argues that appellee said that he was paid for fifty-three weeks:

Q Now, with respect to your pay from the Crocker Company, you indicated that you were talking about a paid vacation. That's I gather pay in addition to a fifty-two week year?

A That's correct.

This testimony, appellant claims, conclusively demonstrates that appellee receives fifty-three paychecks from Crocker Company annually.

Although appellee's testimony could be construed in that manner, a more complete analysis shows that the testimony supports the trial court's finding that appellee received fifty-two pay checks from Crocker Company. After establishing that appellee's pay checks were for $1,000 and that he received one week of paid vacation, appellee's attorney asked him what his annual salary from the Crocker Company was. Appellee responded that it was $52,000. The natural inference to be drawn is that appellee received fifty-two pay checks. Appellee further attempted to clarify his testimony when he stated:

Q Didn't you testify in response to [your attorney's] question that you got fifty-two weeks of pay, one week being a paid vacation?

A That's correct.

Q So you do get an additional lump sum in addition to the time off you take from work?

A No, I don't.

Q You don't?

A Let me make sure I understand your question. I get fifty-two weeks of salary a year. In addition to that I get one week additional salary paid vacation.

Q And during the fifty-two weeks you take a week off?

A Yes. That week is paid vacation.

Although appellee had difficulty expressing himself, it was not clearly erroneous for the trial court to find that the above testimony indicated that appellee was paid for fifty-two weeks.

 Appellant also claims that the trial court's finding that appellee's U.S. Army Reserve pay was $12,000 was clearly erroneous. Appellant claims that there was testimony that appellee had already received pay checks in excess of that amount. The record is clear, however, that a part of appellee's checks from the Reserves was not salary but reimbursement for out-of-pocket expenses. At the November 25, 1994 hearing on the matter appellee testified that:

Q [O]n the W–2 from the military . . . [u]sing this document, therefore, if the year were to have ended at the end of September, 1994, your W–2 [salary] would—

A $11,661.23

Appellee also explained that, as of September 1994, most of his salary from the Reserves for 1994 had already been paid to him. In light of this evidence, the trial court was not clearly erroneous when it determined that appellee was paid $12,000 per year by the U.S. Army Reserves.

## V

 Appellant's fifth contention is that the trial court erred when it failed to add to appellee's actual income the value he derived from the use of a company car provided by Crocker Company as it may do pursuant to MD.CODE ANN., FAM. LAW § 12–201(c)(3)(xv) (1989). Appellant claims that the trial court's failure to add this value to appellee's income resulted in an improper calculation of appellee's child support obligation using the child support guidelines. The trial court stated in its January 12, 1995 opinion and order that it "would like to apply a value to the use of the company car, but no evidence was produced of rental values of vehicles." Appellant argues that the trial court had before it redacted copies of appellee's personal income tax returns stating a value of his personal use of the company car. As a result, appellant

asserts that the trial court's determination that there was no evidence of the car's value was clearly erroneous.

Appellant misinterprets the information contained within those portions of appellee's tax returns furnished to the trial court from 1990, 1991, 1992, and 1993. There is no valuation of the personal use of the company car calculated on appellee's income tax returns. Section A lists general information including total mileage the vehicle was used in each year; miles driven for business purposes; percent of business use; average daily commute; and miles included within business miles that pertain solely to the commute. Section B required appellee to multiply the number of miles he drove for business purposes by .26. This might provide a business value of a personal car.[7] Nowhere on the tax return, however, is there a figure that could be utilized to determine a value of the personal miles for which the car was used. Additionally, the trial court accurately stated that no other evidence of the rental value of the car was presented to it during the hearing. The trial court, therefore, did not err when it refused to determine a value of the company car furnished to appellee by Crocker Company.

## VI

Appellant finally contends that the trial court erred when it failed properly to consider appellee's share of the capital gains derived from the sale of his home as income for purposes of the child support guidelines.[8] MARYLAND CODE ANNOTATED, FAMILY LAW § 12–201(c)(4)(ii) (1989) permits a trial court to include capital gains in a party's actual income for child

---

7. We note that Section B is only to be used if the individual filing the tax return owns the car. In this case, both parties and the trial court assumed that the Crocker Company owns the vehicle. As a result, we are perplexed by appellee's decision to use Section B.

8. Appellant also asserts as a part of this argument that the trial court erred when it failed to include capital gains derived from the sale of the home as a liquid asset in its determination of appellant's request for attorney's fees. We shall not discuss this again as we addressed it in full in section III of this opinion.

support guideline purposes "[b]ased on the circumstances of the case." Appellant argues that the trial court's stated reason for excluding appellee's capital gains from his actual income was clearly wrong.

Appellant notes that at the November 25, 1994 hearing appellee testified that he bought the house for $260,000 and sold it for $320,000, realizing a capital gain of approximately $60,000. Appellee stated:

Q Now, [appellee], you have realized some capital against this year, haven't you?

A From the sale of a house, yes.

 \* \* \* \* \* \*

Q What was the selling price of that home?

A The selling price was $320,000.00.

 \* \* \* \* \* \*

Q How much did you purchase it for?

A $260,000.

 \* \* \* \* \* \*

Q So you realized a net capital gain of $60,000.00 this year by reason of the sale of that home?

A No, that is incorrect. It was less than that because we had major things we did to it.

Q And you are, what, now building a home—

A No. We are not.

The exact amount of the capital gain realized was never settled.

The trial court, however, declined to include any capital gains in appellee's actual income for the purpose of using the child support guidelines. In reaching this decision, the only statement the trial court made in its opinion and order was:

[Appellee] admits realizing a capital gain on the sale of the former marital home, but contends the proceeds were used for repairs and maintenance of his present home.

Appellant asserts that this finding of fact was clearly wrong and that, therefore, the trial court's reason for excluding the

capital gain appellee realized from the sale of the home was clearly wrong.

■ FAMILY LAW § 12–201(c)(4) states:

*Based on the circumstances of the case,* the court *may* consider the following items as actual income: ...; (ii) capital gains;....

*Id.* (emphasis added). The language used by the legislature in § 12–201(c)(4) indicates that the legislature intended that a trial court's decision of whether to include capital gains as a part of a party's actual income be within the sound discretion of the trial court and should only be disturbed on appeal if the trial court abused that discretion or if its judgment on the matter was clearly wrong. *See Gates v. Gates,* 83 Md.App. 661, 663, 577 A.2d 382 (1990). *Cf. Petrini v. Petrini,* 336 Md. 453, 462, 648 A.2d 1016 (1994). We note, however, that a capital gain which is the result of a one-time transaction—rather than a recurring source of income as when parties are engaged in the purchase and sale of real estate property as a means of income—may not qualify as ordinary income for purposes of calculating child support.

■ In the case *sub judice,* the trial court's judgment was clearly wrong. Its finding of fact that appellee used the proceeds for "repairs and maintenance of his present home" finds no support in the record and is directly contradicted by appellee's testimony explaining that he and his wife realized less than $60,000 capital gain from the sale of the house because they had spent money on the home after they purchased it and before it was sold. As a result, there is no basis in the record for the trial court's stated reason supporting its decision to exclude the capital gain appellee realized from his actual income. Hence, that decision was clearly wrong and an abuse of discretion.

In sum, on remand, appellee's motion for protective order should be denied; the court should reconsider computation of child support and whether to award attorney's fees to appellant; it should determine the amount of capital gain appellee realized from the sale of the house; and, in accord with

MD.CODE ANN., FAM. LAW § 12–201(c)(4), it should determine whether, "[b]ased on the circumstances of the case," that capital gain should be included as a part of appellee's actual income.

JUDGMENT OF THE CIRCUIT COURT FOR QUEEN ANNE'S COUNTY VACATED, AND CASE REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION.

COSTS TO BE PAID BY APPELLEE.